# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2014

Lyle W. Cayce
Clerk

No. 12-31161

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

REGINALD G. YOUNGBLOOD,

Defendant – Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:11-CR-6-1

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

The defendant, Reginald Youngblood, was convicted of possession with intent to distribute marijuana and hydrocodone, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon. In sentencing Youngblood, the district court also took into account crack cocaine that was found at Youngblood's home, but that was later suppressed. This inclusion increased Youngblood's base offense level. After this increase, Youngblood was sentenced to a total of 112 months in prison (delivered as two

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31161

52-month sentences running concurrently, and one 60-month sentence to run consecutively to the 52-month sentences).  Youngblood now appeals his conviction arguing that the district court erred in accepting Youngblood's waiver of his right to conflict-free counsel, and that there was insufficient evidence to support his conviction.  Additionally, Youngblood argues that the district court erred in sentencing him because the suppressed crack cocaine should not have been considered for sentencing purposes.  We AFFIRM Youngblood's conviction and sentence.

I.

In June 2010, Captain Todd Morris ("Captain Morris"), a member of the homicide division in the East Baton Rouge Parish Sheriff's Office, was investigating Youngblood for attempted murder.  During this investigation, Captain Morris became aware that Youngblood was also being investigated for drug trafficking by Detective Eric Burkett ("Detective Burkett") of the narcotics division in the Baton Rouge City Police Department.  As part of his murder investigation, Captain Morris obtained an arrest warrant for Youngblood and a search warrant for his house.  He invited Detective Burkett to participate in the execution of the warrants.

During the search of Youngblood's home, a bag of marijuana was found on an ironing board, two handguns were found in a dresser drawer, more than $19,000 in cash was found in two closets, a bottle filled with hydrocodone pills was found on top of a dresser, and seventeen grams of crack cocaine were found in a cereal box.  Relevant to one of the issues on appeal, the crack cocaine was found by a detective from the Sheriff's Office.

Subsequently, Youngblood filed a suppression motion as to all of these materials and all statements he made during the search.  The Government conceded that the search of the cereal box that yielded the crack cocaine exceeded the scope of the warrant; accordingly, the Government conceded that

No. 12-31161

the crack cocaine (and Youngblood's statements about it) should be suppressed. Consistent with this view, the Government filed a superseding indictment charging Youngblood in Count 1 with possession with intent to distribute marijuana and hydrocodone, 21 U.S.C. § 841(a)(1); in Count 2 with possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and in Count 3 with possession of a firearm by a felon, 18 U.S.C. § 922(g)(1).

On the first day of Youngblood's trial, the district court was advised that both of Youngblood's attorneys had represented Youngblood's wife, Delilah Youngblood, in related proceedings. One of Youngblood's attorneys, Rodney Messina, represented Delilah in civil forfeiture proceedings in which Delilah attempted to recover the money seized from the Youngbloods' home. Delilah eventually stipulated to the forfeiture. Youngblood's other attorney, Marci Blaize, represented Delilah in grand jury proceedings arising out of the search of the Youngbloods' home. In these proceedings, Delilah invoked her Fifth Amendment right against self-incrimination and the martial privilege.

In the light of this conflict, the district court assigned the Federal Public Defender's Office (FPD) to advise Youngblood of the potential conflict of interests and its consequences and to ensure that Youngblood understood his right to conflict-free counsel. After Youngblood met with the FPD, the district court held a hearing on the conflict of interests. During this hearing, the district court judge questioned Youngblood directly to ensure that Youngblood understood that he had the right to conflict-free counsel, what the consequences of waiving that right could be, and that Youngblood nonetheless wished to waive it. After this colloquy, Youngblood indicated that he wished to waive his right. Satisfied that Youngblood was sufficiently informed, the district court accepted Youngblood's waiver.

Youngblood was subsequently convicted on all three counts. After the conviction, a presentence investigation report was prepared, which included

No. 12-31161

the suppressed crack cocaine in the calculation of Youngblood's base offense level. Specifically, had the crack cocaine not been included, Youngblood's base offense level for Count 1 (possession with intent to distribute) would have been 14; because the crack cocaine was included, the base offense level rose to 22. Youngblood objected to the consideration of the crack cocaine, but the district court denied this objection. The district court imposed a within-guidelines sentence of 52 months of imprisonment for Counts 1 and 3, to be served concurrently, and 60 months on Count 2 (the statutory minimum), to be served consecutively to the 52-month sentences. Youngblood now appeals his conviction and his sentence, raising two issues related to the conviction and one related to his sentence. We discuss each in turn.

II.

We begin by addressing Youngblood's sufficiency challenge. Youngblood argues that his convictions on Counts 1 and 2 should be vacated because the Government failed to provide sufficient evidence that he intended to distribute the marijuana—as opposed to possessing it for personal use—and failed to provide sufficient evidence that he possessed the hydrocodone.

Because Youngblood did not renew his motion for acquittal at the close of all evidence, we review this issue for plain error. *United States v. Delgado*, 672 F.3d 320, 330–32 (5th Cir. 2012) (en banc). Applying this standard to sufficiency claims specifically, we reject unpreserved sufficiency claims "unless the record is devoid of evidence pointing to guilt or if the evidence is so tenuous that a conviction is shocking." *Id.* at 330–31 (emphasis omitted). "Similarly, we have summarized the plain-error test's application to unpreserved sufficiency claims by stating that the court will reverse only if there is a manifest miscarriage of justice." *Id.* (quotation marks and emphasis omitted). To be sure, Youngblood has a high hurdle to clear in successfully establishing his unpreserved sufficiency challenge.

4

No. 12-31161

Youngblood does not clear the hurdle.  To establish possession with intent to distribute, the Government had to prove beyond a reasonable doubt that Youngblood "(1) knowingly (2) possessed a controlled substance (3) with intent to distribute it."  *United States v. Williamson*, 533 F.3d 269, 277 (5th Cir. 2008).  Youngblood argues that the Government did not prove that he had intent to distribute the marijuana, or that he possessed the hydrocodone.

Beginning with the intent to distribute marijuana, Youngblood argues that based on his sharing a residence with his wife, only half of the marijuana found should be considered to be his; and that this lesser amount is consistent with personal use.  He presents no authority for this argument, but even if we were to accept it, there is clearly sufficient evidence that Youngblood had an intent to distribute.  First, assuming we attribute the entire amount of marijuana to Youngblood, there was an amount of marijuana—nearly half a pound—that an expert testified was inconsistent with personal use, and this is sufficient to uphold Youngblood's conviction.  *See id*. at 277–78 ("[T]he mere possession of a quantity of drugs inconsistent with personal use will suffice for the jury to find intent to distribute.").  Even if we were to accept Youngblood's argument and consider only half the amount found, that two weapons, more than $19,000 in cash, and a digital scale were found in the home would support the finding of an intent to distribute.  *See United States v. Kates*, 174 F.3d 580, 582 (5th Cir. 1999) ("Possession of a small quantity of illegal drugs consistent with personal use does not support an inference of intent to distribute *in the absence of other evidence*, such as drug paraphernalia, guns, or large quantities of cash." (citations omitted and emphasis added)).  In short, there is ample evidence to support Youngblood's conviction for intent to distribute marijuana.

We reach a similar conclusion in dealing with Youngblood's argument about the hydrocodone.  He argues only that he did not have possession of the hydrocodone because it was found near his wife's belongings.  Possession can

be established as actual or constructive. "Constructive possession may be found if the defendant had (1) ownership, dominion, or control over the item itself or (2) dominion or control over the premises in which the item is found." *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012) (internal quotation marks omitted). When, as here, a residence is jointly occupied, there must be "some evidence supporting a plausible inference that the defendant had knowledge of and access to the illegal item." *Id.* (emphasis and internal quotation marks omitted). We have held that the item being in plain view will support such an inference. *Id.* at 421. Here, the hydrocodone was found in plain view atop a dresser. Accordingly, there is sufficient evidence for a jury to find that Youngblood possessed the hydrocodone. And, similar to the marijuana, the amount of hydrocodone and the other items found are sufficient to establish Youngblood's intent to distribute. We therefore hold that there was sufficient evidence to convict Youngblood on all counts.

### III.

Next, we turn to Youngblood's argument that the district court erred in accepting Youngblood's waiver of conflict-free counsel. "We review the district court's acceptance of defendant's waiver of conflict-free counsel for simple error." *United States v. Rodriguez*, 278 F.3d 486, 492 (5th Cir. 2002).

The Sixth Amendment right to counsel includes the "right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993). "A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985). A defendant may choose to proceed with representation by counsel who has a conflict, but the district court must hold a hearing to ensure a valid waiver by the defendant of his right to conflict-free counsel. *United States v. Garcia*, 517 F.2d 272, 277–78 (5th Cir.

No. 12-31161

1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n.2 (1984).

Like any other constitutional right, the waiver of the right to conflict-free counsel "must be an intentional relinquishment or abandonment of a known right." *Garcia*, 517 F.2d at 276 (internal quotation marks omitted). Generally speaking, a court should "indulge every reasonable presumption against waiver of fundamental constitutional rights" and should "not presume acquiescence in the loss of a fundamental right." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks and citation omitted). Specific to the right to conflict-free counsel, to determine whether a valid waiver has been made, "we must search the record for a basis upon which to conclude" that the defendant had "actual knowledge of the existence of the right," "full understanding of its meaning," and "clear comprehension of the consequence of the waiver." *United States v. Newell*, 315 F.3d 510, 519 (5th Cir. 2002) (emphasis omitted).

Here, we discern no error in the district court's acceptance of Youngblood's waiver. The district court went to substantial lengths to ensure that Youngblood understood his right and understood the consequences of waiving it. Beyond merely questioning Youngblood, the district court appointed an FPD, an independent attorney, to counsel Youngblood about this particular issue. All three attorneys who spoke to Youngblood—the FPD and Youngblood's two attorneys—expressed confidence that Youngblood understood his right and was making a knowing waiver of that right.

Youngblood's central argument on appeal is that the district court did not expressly explain to him that his counsel's prior representation of Delilah might deter his counsel from calling Delilah in his defense. This claim is belied by the record. Although much of the district court's discussion with Youngblood is focused on the potential that Delilah will be called as a witness,

No. 12-31161

the district court also made clear that the conflict of interest may "affect the way that, for instance, your lawyers select the jury in this case or call witness in this case[.]" Youngblood indicated that he understood these risks and nonetheless wished to waive his right. Given these factors—the substantial questioning by the district court and the discussions with both his own attorneys and independent counsel—we hold that the district court did not err in accepting Youngblood's waiver.[1]

IV.

Finally, we address Youngblood's argument that the district court erred in considering the suppressed crack cocaine in determining Youngblood's sentence. As an initial matter, it is settled in this circuit that suppressed evidence may be considered generally when sentencing. *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1181 (5th Cir. 1993) (agreeing with a prior decision that "evidence suppressed at trial for violation of the Fourth Amendment may later be considered in determining a defendant's base offense level under the Guidelines"). Youngblood argues that this case fits into an exception to that rule recognized in *Montoya-Ortiz*; namely, that the suppressed evidence should not be considered at sentencing because it "was unconstitutionally seized for the sole purpose of enhancing [Youngblood's] sentence." *Id.* at 1181 n.10.

*Montoya-Ortiz* left the door open for this circuit to adopt such an exception without explicitly endorsing it. Because, even assuming the

---

[1] Even if we reached the opposite conclusion, Youngblood would be unable to establish a Sixth Amendment violation. Such a violation requires showing that the conflict of interest prevented counsel from pursuing a plausible alternative defense. *United States v. Infante*, 404 F.3d 376, 393 (5th Cir. 2005). Here, Youngblood argues that his wife could have testified that the contraband belonged to her. This defense is hardly plausible in the light of the substantial evidence that the Government presented that would plainly establish that such testimony would be untrue.

8

exception exists, Youngblood would not prevail on this issue, we take the same course. Youngblood points to several facts that he argues demonstrate that the drugs were seized for the sole purpose of increasing his sentence: (1) the intimate involvement of Detective Burkett, a narcotics officer, in the search; (2) the execution of the warrant including the search of "every conceivable container in the house"; and (3) the fact that he was prosecuted for the drug offense in federal court while charges were also pending in state court.

We hold that these circumstances are not sufficient to establish that the crack cocaine was seized for the sole purpose of increasing Youngblood's sentence. First, although Detective Burkett was involved in the search, it was in fact one of the officers investigating Youngblood for attempted murder who found the crack cocaine. Second, Youngblood asserts that "every conceivable container in the house" was searched, but cites no examples beyond the single cereal box. Without more context, it is impossible to say that other containers that were searched were beyond the legitimate scope of the warrant. Finally, we are unwilling to read illicit motives into a prosecutor's decision to bring charges when a crime has undoubtedly been committed, particularly a crime serious enough to warrant nearly ten years in prison. In sum, we hold that Youngblood has not established that the crack cocaine was seized for the sole purpose of increasing his sentence, and we therefore do not decide whether such an exception is proper.

V.

For these reasons, Youngblood's conviction and sentence are

AFFIRMED.