# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 8, 2022

Lyle W. Cayce
Clerk

No. 19-20073

United States of America,

*Plaintiff—Appellee*,

*versus*

Ann Nwoko Sheperd,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CR-258-2

Before Smith, Willett, and Duncan, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

"The Sixth Amendment is the heartland of constitutional criminal procedure."[1] One of four amendments in the Bill of Rights that guarantees basic protections to the criminally accused,[2] the Sixth Amendment enshrines a cluster of rights to ensure the fairness, accuracy, and legitimacy of "all

---

[1] Akhil Reed Amar, *Sixth Amendment First Principles*, 84 Geo. L.J. 641, 641 (1996).

[2] *See* U.S. Const. amends. IV, V, VI, VIII.

criminal prosecutions."[3] This case concerns the Amendment's final clause: "Assistance of Counsel." But "[t]his last right is a big one," as the right to counsel, perhaps the central feature of our adversarial system, helps make real the Constitution's other criminal procedure promises.[4]

Ann Sheperd, the owner of a home-health agency, lawyered up after being indicted for Medicare fraud. But there was a tiny problem: Unbeknownst to Sheperd, her pretrial lawyer—who represented her until days before trial—*also* represented one of the Government's star witnesses. Oops. Sheperd retained new counsel, was convicted (and sentenced to 30 years), and now appeals on various grounds related to her attorney's conflict of interest. We agree with Sheperd that "Assistance of Counsel" necessarily means *effective* assistance, and effective assistance demands conflict-free representation. This is certainly no less true during the pretrial phase,[5] particularly today, when roughly 97.8 percent of federal criminal convictions are obtained not through a constitutionally prescribed jury trial but through plea bargaining.[6]

For the reasons below, we REMAND for an evidentiary hearing on whether Sheperd's lawyer's conflict of interest adversely affected his representation, but reject Sheperd's other grounds for reversal.

---

[3] *Id.* amend. VI.

[4] Amar, *supra* note 1, at 705.

[5] *See Anaya v. Lumpkin*, 976 F.3d 545, 550 (5th Cir. 2020) ("The Sixth Amendment right to counsel extends to the plea-bargaining process, where defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012))).

[6] U.S. Sentencing Comm'n, 2020 Sourcebook of Federal Sentencing Statistics 56 (2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/2020-Annual-Report-and-Sourcebook.pdf.

No. 19-20073

## I

## A

Ann Sheperd owned and operated a home-health agency. In June 2016, a grand jury indicted her (and several others) with conspiracy to commit healthcare fraud. Sheperd retained counsel. The district court set trial for August 2016. A month later, Sheperd replaced her counsel, and the district court declared the case "complex." The court also pushed back the trial date about six months. The district court continued the trial three more times at the request of various defendants. Sheperd made only one of these requests. Sheperd replaced her counsel again in February 2018 with an attorney named Bassey Akpaffiong.

Two months after entering his appearance as Sheperd's counsel, Akpaffiong met with FBI agents and a federal prosecutor to discuss Sheperd's trial. But he was not there acting on Sheperd's behalf. Akpaffiong was there to act on another client's behalf—Okechukwu Okpara. Akpaffiong had helped Okpara secure a plea deal related to healthcare fraud in a different district court almost a year before. So why did Okpara need Akpaffiong at the meeting? Because Okpara was Sheperd's friend and business associate—a relationship the Government wanted to exploit by calling Okpara as a witness *against* Sheperd.

If representing both Sheperd and Okpara at the same time sounds zany to you, then you wouldn't be alone. The Government thought it sounded zany, too. In fact, it even pointed out to Akpaffiong that he had an obvious conflict. Akpaffiong replied that he hadn't noticed.[7] Even so, the meeting continued since, according to Akpaffiong, "Sheperd wanted to plead guilty

---

[7] According to Akpaffiong, the oversight came from Okpara referring to Sheperd by a different name— "Nwoko," her middle name.

and would do so by [the next month, in] May." Turns out, the meeting was a success . . . for Okpara. Afterward, the Government amended Okpara's plea deal to include "5K1 consideration." That is, in exchange for Okpara having provided the Government with "substantial assistance in the investigation or prosecution of another person who has committed an offense," the Government agreed to permit Okpara to receive a reduced sentence.[8]

Months went by. Nobody told Sheperd about Akpaffiong's conflict. Nobody told the district court about it either. But that time was not wasted. The Government used it to bring six more counts of healthcare fraud against Sheperd. The grand jury returned a superseding indictment that charged Sheperd with all six counts. Akpaffiong, for his part, continued to receive Government-provided discovery. Not until August—with trial looming— did Akpaffiong start trying to address his conflict. He approached a former state Assistant Attorney General with experience prosecuting healthcare-fraud cases—Oyesanmi Alonge—about taking over Sheperd's defense. Akpaffiong had worked with Alonge before, and Alonge "got involved," in his words, on August 14.

Days later, on August 20, Akpaffiong finally revealed to Sheperd his conflict and proposed solution.[9] But Sheperd felt burned. She claims her experience with Akpaffiong made her "extremely distrustful of lawyers." Two days later, on August 22, Sheperd told Alonge not to represent her.

---

[8] U.S. Sent'g Guidelines Manual § 5K1.1.

[9] There is some disagreement on the exact date Sheperd was informed that Alonge was taking over. Sheperd told the district court that she did not hear about Akpaffiong's conflict and Alonge taking over until August 20. But Alonge's motion for continuance asserted that she knew the same day he first got involved in the case on August 14. If the precise date Sheperd found out about Alonge's involvement has any relevance, we leave it to the district court to resolve this factual discrepancy on remand.

No. 19-20073

Alonge conveyed this information to the Government. The Government conveyed it to the district court. The district court set a status conference.

The status conference took place on August 27, 2018. Alonge was not present. Akpaffiong assured the court that Alonge would be prepared for trial two weeks later. That same day, Sheperd changed her mind about Alonge. She agreed to let him represent her, and Akpaffiong then withdrew as counsel.

A few days later Sheperd's case was transferred to a new judge. The new judge held a pretrial conference on September 4. At the conference the judge asked the parties if they could move up the trial date. All parties represented they could not, pointing, in part, to Alonge's recent appearance in the case. Counsel for defendants also flagged the conflict issue for the district court, but suggested that the trial could proceed so long as Okpara did not testify. After discussing the conflict, the judge stated that after "32 years on the federal side plus 8 on the state side, I have not seen th[is]" type of conflict. The district court then, to the surprise of all parties, moved the trial date up by three days—to Friday, September 7.

On September 6, the day before trial, Alonge moved for a continuance, arguing, "The unfortunate circumstances surrounding the status of Ms. Shepherd's [*sic*] counsel ha[d] denied [him] significant trial preparation time." He had "only worked meaningfully on [the] case for approximately one week," despite having been involved for three. Alternatively, Alonge moved to withdraw. That same day, all defendants also filed a joint motion, asking the court to, among other things, continue the trial and exclude Okpara's testimony. The court did not rule on the motions. Trial began the next day.

## B

A few days into trial, the Government called Okpara as a witness. That brought the conflict-of-interest issue to a head. Defense counsel collectively reasserted the arguments from their pretrial motion: (1) Akpaffiong could have provided Okpara with privileged information to enhance Okpara's efforts to cooperate with the Government; (2) if Okpara testified, he could share self-incriminating statements that Sheperd shared with Akpaffiong; and (3) the current indictment could have been based on tainted information from Okpara. Akpaffiong and Sheperd took the stand. The district court ultimately excluded Okpara from testifying.

At the close of trial, Alonge renewed the defendants' joint pretrial motion, asking the district court to dismiss the case because of the conflict of interest. The district court denied the motion. The jury found Sheperd guilty on all counts. The district court sentenced her to 30 years in prison. Sheperd timely appealed, alleging several grounds to reverse based on Akpaffiong's conflict of interest.

## II

Sheperd mainly argues that Akpaffiong's conflict violated her Sixth Amendment right to conflict-free counsel. We review ineffective-assistance-of-counsel claims, like this one, as a mixed question of law and fact subject to de novo review.[10] Because the district court did not find, one way or the other, whether Akpaffiong's conflict adversely affected his representation of Sheperd, we REMAND for a limited evidentiary hearing on this issue.

---

[10] *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).

A

The Constitution guarantees criminal defendants the right to a fair trial. The Supreme Court has explained that one of the safeguards making trials fair is the right to counsel.[11] "In all criminal prosecutions," the Sixth Amendment declares, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[12] That's no hollow guarantee. The Counsel Clause does not countenance empty suits; it requires "*effective* assistance of counsel"[13]—the presence of competence and absence of conflicts.

Unfortunately, not all representations meet that standard. At times a representation may suffer from "actual ineffectiveness"—one that "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[14] That standard is satisfied when the defendant can show that (1) her "counsel's representation fell below an objective standard of reasonableness,"[15] and (2) that the "deficiencies in counsel's performance [were] prejudicial to the defense."[16]

That two-pronged test has a special application when a defendant argues that her representation was infected with a conflict of interest. One of the most indispensable duties that any counsel owes his client is the duty of loyalty. Counsel breaches that duty when he labors under an actual conflict

---

[11] *See Strickland v. Washington*, 466 U.S. 668, 684–86 (1984).

[12] U.S. Const. amend. VI.

[13] *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)) (emphasis added).

[14] *Id.*

[15] *Id.* at 688.

[16] *Id.* at 692.

of interest. And if he breaches the bedrock duty of loyalty, then his representation will fall below the objective standard of reasonableness that the Constitution requires.[17]

But what about prejudice? Defendants still need to show it in actual-conflict cases. They show it, though, in a special way—by showing that their case is subject to a limited presumption of prejudice. Whether it applies boils down to one question: Did the conflict "adversely affect[]" counsel's performance?[18] That's a lighter lift for defendants. Proving prejudice directly means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[19] On the other hand, the limited presumption of prejudice in actual-conflict cases turns on whether the conflict adversely affected the representation *itself*.[20] One way defendants can answer that mixed question of law and fact is through "evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients."[21]

---

[17] *Id.*

[18] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)); *see also Infante*, 404 F.3d at 390–91 (explaining that a defendant "must show that his trial attorney was acting under the influence of an actual conflict of interest that adversely affected his performance at trial").

[19] *Strickland*, 466 U.S. at 694. The Supreme Court in *Strickland* also explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

[20] *See Infante*, 404 F.3d at 391.

[21] *Id.* at 393 (quoting *Perillo v. Johnson*, 205 F.3d 775, 807 (5th Cir. 2000) (internal quotation marks omitted)).

No. 19-20073

B

The Government concedes "[t]here is no dispute that Akpaffiong operated under a conflict of interest." It also concedes that both it and Akpaffiong "were obligated by rules of ethics to bring the conflict to the court's attention."[22] Still, that's only the first half of Sheperd's burden. She still must prove that Akpaffiong's conflict adversely affected his performance. And on that question, on this record, we can't tell one way or the other.

For instance, Sheperd argues that Akpaffiong was not "proactive" in seeking a plea deal for her. Rather, in Sheperd's words, "he persuaded her that the Government's case was weak and that she should go to trial where she would prevail." That seems to square with Akpaffiong's testimony at a midtrial hearing on his conflict: "I never try to get my clients to plea." But it also strays from his pretrial representations to the Government—when it realized Akpaffiong was conflicted—that Sheperd wanted to plead out. All to say, questions abound about what advice Akpaffiong gave or did not give Sheperd, and what he did or did not do on her behalf.

Just as problematically, even if we knew with precision what Akpaffiong did or did not do for Sheperd, this record sheds little light on his *motives* for doing or not doing it. If Akpaffiong's motives arose from a mind fettered with concern for Okpara, then Sheperd might be correct that her right to counsel was violated. Indeed, some circumstantial evidence already points that way. The Government agreed to a reduced sentence for Okpara based on his cooperation in prosecuting Sheperd. And that deal was enabled, through and through, by Akpaffiong.

---

[22] *See In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976) (discussing ethical prohibitions on "representing parties with adverse interests").

9

No. 19-20073

Though the district court held a midtrial hearing on Akpaffiong's conflict, its limited scope left the record too underdeveloped for us to meaningfully review troubling questions about Akpaffiong's representation. Where an actual conflict existed, but the record is too "spars[e]" for us to review adverse effect, it is appropriate for us to allow the district court to more-fully develop the record with an evidentiary hearing.[23] Therefore, we must REMAND for the district court to do just that.[24]

## III

Sheperd advances two other grounds for reversing the district court. First, she argues that it abused its discretion by denying Alonge's continuance. Second, she contends that Akpaffiong's conflict violated her rights to due process and against self-incrimination. Because Sheperd's due process ground is derivative of her Sixth Amendment issue, we cannot decide

---

[23] *See United States v. Salado*, 339 F.3d 285, 291–92 (5th Cir. 2003) (remanding for an evidentiary hearing on actual conflict and adverse effect in the joint-representation context due, in part, to the "sparsity of the record"); *Infante*, 404 F.3d at 393 (remanding for an evidentiary hearing on adverse effect because the record was not "sufficiently developed").

[24] But the scope of our remand is limited. Sheperd also urges that she was adversely affected because the lateness of Akpaffiong's withdrawal left her trial counsel with only days to prepare for trial. The Supreme Court, though, has already clarified that what matters in actual-conflict cases, like this one, is whether the *conflicted attorney's* representation was adversely affected—not a subsequent attorney's. *See Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002); *see also id.* at 173 ("[A] judge [can] avoid all possibility of reversal by either seeking waiver [of the conflict] or *replacing a conflicted attorney*." (emphasis added)). Therefore, the district court need not inquire into any collateral effect that Akpaffiong's conflict may have had on Alonge's representation. Further, if Sheperd is raising a separate ineffective-assistance-of-counsel claim against Alonge, we cannot review it on this record since it was not presented to the district court. *See United States v. Wallace*, 32 F.3d 921, 930 (5th Cir. 1994) (stating that an ineffective-assistance-of-counsel claim "cannot be resolved on direct appeal unless adequately raised in the district court").

it until after remand to the district court. We otherwise reject Sheperd's additional grounds for the reasons below.

A

Sheperd claims that the trial court abused its discretion by failing to rule on her motion for a continuance given the conflict of interest.[25] She says that the district court "rushed forward to trial in reaction to the case previously having been continued and out of a general predisposition for expeditious litigation, which was so extreme as to be troubling."

We will "reverse a denial [of a motion for a continuance] only when the district court has abused its discretion and the defendant can establish that he suffered serious prejudice."[26] And "[w]hether a continuance was properly denied depends on the circumstances of the case."[27] Even so, not every "harsh" denial of a continuance is reversible.[28] To decide whether the district court reversibly abused its discretion, we look to the totality of the circumstances. We often find certain factors helpful in reviewing them: (1) "the amount of time available"; (2) "the defendant's role in shortening the time needed"; (3) "the likelihood of prejudice from denial"; (4) "the availability of discovery from the prosecution"; (5) "the complexity of the case"; (6) "the adequacy of the defense actually provided at trial"; (7) "the

---

[25] Although the court did not rule on Sheperd's motion for a continuance, the motion was implicitly denied. *Snider v. L-3 Commc'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 667 (5th Cir. 2019) (explaining that when a district court "enters a final judgment, it has implicitly denied any outstanding motions, even if the court does not explicitly deny a particular motion" (footnote omitted)).

[26] *United States v. Rounds*, 749 F.3d 326, 336 (5th Cir. 2014) (quoting *United States v. Castro*, 15 F.3d 417, 423 (5th Cir. 1994)) (internal quotation marks omitted).

[27] *United States v. Hopkins*, 916 F.2d 207, 217 (5th Cir. 1990).

[28] *United States v. Hughey*, 147 F.3d 423, 431 (5th Cir. 1998).

experience of the attorney with the accused";[29] and (8) the timeliness of the motion.[30]

## (1)

The first factor—the time available—weighs against finding an abuse of discretion. Sheperd repeatedly contends that Alonge had less than two weeks to prepare since he did not file his notice to appear until August 28, 2018—the day after Akpaffiong withdrew. But we mark the time differently. Again, Alonge got involved in Sheperd's case as early as August 14. He also attended a proffer session with the Government three days later, on August 17. Since trial did not begin until September 7, that gave Alonge about three-and-a-half weeks to get ready for trial. We have upheld denial of a motion for continuance before in a case involving "ten defendants, even more witnesses, and voluminous discovery" where counsel was appointed only a week-and-a-half before trial.[31] On these facts, then, Alonge had ample time to prepare for trial.

## (2)

The second factor—the defendant's role in shortening the time needed—weighs *weakly* in favor of finding an abuse of discretion. Sheperd did not create Akpaffiong's conflict. And, as the Government concedes, it was Akpaffiong who delayed informing Sheperd and the district court about

---

[29] *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009).

[30] *See United States v. Krout*, 66 F.3d 1420, 1435–36 (5th Cir. 1995) ("Denial of an eleventh hour . . . motion for a continuance—even when an attorney unfamiliar with the case must take over representation of a defendant—is not an abuse of discretion."). The parties only weakly dispute what factors we should consider in determining whether the district court abused its discretion. As Sheperd concedes, the factors they propose "are essentially substantively similar and relevant."

[31] *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007).

it. Even so, Sheperd contributed to Alonge's time crunch. As a reminder, she told Alonge on August 22 not to represent her, and did not rehire him until August 27. So this factor does not weigh as far in Sheperd's favor as it otherwise could.

(3)

The third factor—the likelihood of prejudice from denial—is neutral. On the one hand, perhaps Akpaffiong's conflict adversely affected his representation of Sheperd. That is why we are sending part of this case back to the district court. On the other hand, and as we detail more below in the sixth factor, Alonge competently defended Sheperd at trial. With facts pointing both ways, the most we can conclude is that the third factor is neutral.

(4)

The fourth factor—the availability of discovery from the prosecution—favors finding an abuse of discretion. Sheperd contends that Alonge "never received six of fourteen discovery discs." And of the discs he did receive, Akpaffiong did not send Alonge the passwords for five of them until 10:00 pm the night before trial. Nor does the Government contend that it provided discovery to Alonge directly. So the fourth factor weighs in favor of finding an abuse of discretion.

(5)

The fifth factor—the complexity of the case—is neutral. The Government admits that this was a "complex" case. At the same time, though, Alonge represented to the jury that he formerly worked as an Assistant Attorney General, and that he had prosecuted healthcare-fraud cases before. Alonge's experience mitigates the case's complexity.

No. 19-20073

(6)

The sixth factor—the adequacy of the defense provided at trial—weighs against finding an abuse of discretion. Sheperd asserts a litany of complaints against Alonge: broadly, that he failed to pursue appropriate remedies for Akpaffiong's conflict; that he failed to subpoena or cross-examine relevant witnesses; and that he failed to put on a defense. But for all Sheperd's complaints about Alonge now on appeal, we cannot help noticing that she did not raise an independent ineffective-assistance-of-counsel claim against him in the district court. And from where we sit, Sheperd has little to complain about. Alonge was not alone in pursuing his strategy that the Government had failed to meet its burden. Ramirez's counsel pursued the same strategy. So, too, did Nwoko's counsel, who called only one, very-brief character witness. *No attorney* cross-examined five of the witnesses that Alonge declined to cross examine. Moreover, Alonge directly examined Sheperd at trial to help exclude Okpara's testimony *because of* Akpaffiong's conflict. And, at closing arguments, Alonge minimized Sheperd's role in the fraud to the jury. We have found that defense counsel performed adequately before on similar facts.[32] As a result, the sixth factor weighs against finding an abuse of discretion.

(7)

The seventh factor—the experience of the attorney with the accused—weighs against an abuse of discretion. As we already outlined above, Alonge had about three-and-a-half weeks to prepare for trial. He also

---

[32] *See Lewis*, 476 F.3d at 387 (holding that counsel's performance was adequate where he cross-examined adverse witnesses and minimized his client's role during opening and closing arguments).

14

held himself out to the jury as an experienced attorney familiar with healthcare-fraud cases.

(8)

The eighth factor—the timeliness of the motion—weighs *heavily* against an abuse of discretion. We have said before that district courts do not abuse their discretion when denying "eleventh hour" motions for continuances.[33] And that includes when the continuance is filed by attorneys "unfamiliar with the case [that] must take over representation of a defendant."[34] Here, Alonge *was* familiar with the case and defendant. Here, Akpaffiong assured the district court that Alonge was ready for trial. And here, Alonge had *weeks* to prepare for trial. If he needed a continuance, then he should have filed it sooner than *the night before* jury selection.

\*    \*    \*

After considering the totality of the circumstances, two factors weigh or weigh weakly in favor of finding an abuse of discretion, two factors are neutral, and four factors weigh against or heavily against finding an abuse of discretion. On balance, then, we cannot say on this record that the district court erred in denying Alonge's motion for a continuance.

B

Finally, Sheperd contends that her Fifth Amendment rights were violated twice over. She first contends that Akpaffiong's conflict violated her due process right to a fair trial. Because her brief argument is completely derivative of her Sixth Amendment's, it will have to be resolved after this

---

[33] *Krout*, 66 F.3d at 1435.

[34] *Id.* at 1435–36.

case returns to the district court.[35] Sheperd also spends a single paragraph contending that Akpaffiong's conflict violated her Fifth Amendment right against self-incrimination. Because she cites no supporting authority for this novel argument, we will not address it.[36]

## IV

Conflicted counsel is rarely effective counsel. Yet we cannot decide on this record if this case is the exception. Therefore, we REMAND for the district court to conduct a limited evidentiary hearing on whether Akpaffiong's conflict adversely affected his representation. Only then can a court decide if Sheperd's Fifth and Sixth Amendment rights to conflict-free counsel were violated. This is a limited remand, however. This panel retains jurisdiction awaiting the district court's findings and conclusions. Otherwise, we AFFIRM the district court's denial of Alonge's eleventh-hour continuance, and we reject Sheperd's additional grounds for reversal.

---

[35] *See United States v. Alvarez*, 580 F.2d 1251, 1260 (5th Cir. 1978) ("We hold today that an accused . . . is deprived of his Fifth *and* Sixth Amendment right to effective assistance of counsel, even in the absence of a showing of prejudice, when his attorney operates under an actual conflict of interest." (emphasis added)).

[36] *See* FED. R. APP. P. 28(a)(8)(A) ("The appellant's brief must contain . . . [an] argument, which must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."); *see also Willis v. Cleco Corp.*, 749 F.3d 314, 318 n.3 (5th Cir. 2014) (explaining that we will disregard appellate arguments where "citations are minimal, and legal analysis relating facts to the law is largely absent").