# United States Court of Appeals for the Fifth Circuit

———————

No. 24-10436

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2026

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Acacedric Rashod Ware,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-1366

———————————————————————

Before Jones, Stewart, and Willett, *Circuit Judges*.

Per Curiam:[*]

This appeal concerns Reed Prospere's brief dual representation of Acacedric Ware and Charles Van Zandt after their criminal cases proved to be connected. After receiving a 235-month sentence for drug offenses, Ware sought § 2255 relief on the ground that Prospere's dual representation violated the Sixth Amendment. Although Prospere withdrew from Ware's case once the conflict surfaced, Ware contends that the conflict still led to a

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

harsher sentence. But even assuming an actual conflict, Ware has not shown the adverse effect required for relief. We therefore AFFIRM.

I

Resolving this appeal requires us to recount Ware's criminal case, the revocation of his pretrial release, his sentencing, and the ensuing habeas proceedings.

A

In 2015, a federal grand jury indicted Ware on two drug-conspiracy counts. Ware retained Reed Prospere, pleaded guilty, and agreed during pretrial release to help authorities investigate other suspected traffickers. Under that cooperation agreement, Ware could not engage in drug or gun transactions unless law enforcement authorized him to do so. FBI Special Agent (SA) Michael Hillman supervised much of Ware's work as a confidential human source.

While Ware was serving as a source, Charles Van Zandt—a cooperating witness in another drug case—implicated Ware in illicit drug transactions in the Eastern District of Texas. In September 2017, task-force agents observed Van Zandt engage in a drug transaction and arranged a traffic stop of the truck he was driving: a tan Nissan Murano. Although agents videotaped the transaction and arrested Van Zandt, they were unable to identify his counterparty. That individual was later identified as Ware. The uncontrolled transaction violated the terms of Ware's cooperation agreement. Like Ware, Van Zandt retained Prospere, and he later testified that he did so at Ware's suggestion.

In February 2018, Van Zandt and Prospere met with DEA task-force agents and expressed interest in cooperating. Van Zandt proffered that his landlord—a "major cocaine trafficker"—had been in the Nissan with him

during the September 2017 transaction. He also said that the Nissan came from a car lot owned by his landlord's brother. Fearing for his safety, however, Van Zandt declined to identify his landlord more specifically. Agents then searched property records and learned that Van Zandt's rental home was held by "A Ware Investments"—a company owned by Ware.

A couple of months later, Van Zandt and Prospere attended a second proffer session with the task-force agents. At that meeting, Prospere learned that Ware's and Van Zandt's cases were connected. Van Zandt identified Ware as the person who had been inside the Nissan with him during the September 2017 transaction. He further stated that the cocaine in his possession at the time of his arrest was intended for Ware, who supplied him weekly with one to three kilograms. Van Zandt also described aspects of Ware's trafficking operation, including the identities of two participants.

B

After Van Zandt indicated that Ware was involved in fresh drug crimes, the Government moved to revoke Ware's pretrial release. The district court granted the motion and issued a warrant for Ware's arrest. Ware appeared at his initial revocation hearing with Prospere still as counsel. Prospere, however, immediately moved to withdraw based on a general "conflict of interest." The district court therefore continued the hearing to a later date so that Ware could obtain substitute counsel.

While the hearing was paused, Prospere filed an affidavit disclaiming any prior knowledge of Ware's relationship with Van Zandt. According to Prospere, he "was surprised to learn" during the second proffer session "that Ware and Van Zandt were . . . involved in drug transactions together." Believing that "Ware had caused the problem and conflict," Prospere withdrew from Ware's case and continued representing Van Zandt. After Ware obtained new counsel, the revocation proceedings resumed; Ware

waived his preliminary and detention hearings, and the magistrate judge ordered him detained pending trial.

The presentence report prepared before revocation placed Ware's base offense level at 34 based on his stipulation to trafficking 18,248.48 kilograms of marijuana. *See* U.S.S.G. § 2D1.1(c)(3) (providing the quantities of marijuana for an offense level of 34). Because Ware "was an organizer or leader of a criminal activity that involved five or more participants," the report increased his offense level to 38. *See id.* § 3B1.1(a). It then reduced that level by three for acceptance of responsibility and cooperation, yielding a total offense level of 35. *See id.* § 3E1.1.(a)–(b). Combined with a criminal-history category of I, that produced a Guidelines range of 168–210 months' imprisonment. *See id.* § 5C1.1(f) ("[T]he minimum term shall be satisfied by a sentence of imprisonment" if the guideline range is in Zone D); *see also id.* S 5A (Sentencing Table, Zone D).

After Ware's pretrial release was revoked, the probation office prepared an addendum to the PSR. Because Ware had engaged in new criminal conduct, the addendum removed his three-level reduction for acceptance of responsibility and cooperation. That increased his total offense level to 38 and his Guidelines range to 235–293 months. *See id.* § 5C1.1(f); *see also id.* S. 5A. Before sentencing, Ware objected to that recalculation, arguing that he had cooperated with law enforcement and that Van Zandt had supplied unreliable information against him.

C

Several witnesses testified at Ware's sentencing hearing. Ware called Special Agent Hillman; Dennis Brady, a retired FBI agent; his brother, Adarrien Ware, who owned the lot from which the Nissan was allegedly borrowed; and some mitigation witnesses. The Government called one witness, Van Zandt. Hillman described Ware's work as a confidential human

source, including his role in identifying traffickers and gathering evidence for their prosecution. The Government did not dispute that Ware had been useful to law enforcement, but it questioned Special Agent Hillman about the drug transaction that led to revocation of Ware's bond. Special Agent Hillman testified that the DEA agent who received Van Zandt's proffer alerted him to Ware's potential violation and shared video footage of the September 2017 transaction. But neither Hillman nor the DEA agent could confirm that Ware was the man in the car with Van Zandt.

Van Zandt's testimony, however, incriminated Ware. He testified that he and Ware had an extensive history of dealing drugs together, described his fear of Ware, and recounted conversations about their trafficking activities. At times, Van Zandt contradicted both his prior statements and his testimony at the hearing. The district court ultimately sentenced Ware to 235 months' imprisonment—the low end of the recalculated Guidelines range—and three years of supervised release. The court explained that the sentence rested "on the content of the presentence report, the addendum, and the testimony that ha[d] been offered" at the hearing. And it specifically found Special Agent Hillman's testimony sufficient to overrule Ware's objection to the recalculated range.

D

After sentencing, Ware filed two motions: one to vacate his conviction under 28 U.S.C. § 2255 and another seeking discovery and an evidentiary hearing. He argued that his Due Process and Sixth Amendments rights were violated because he made incriminating statements while Prospere represented both him and Van Zandt. He also argued that his sentencing lawyers were ineffective for failing to contend that those statements were unlawfully obtained. And he requested an evidentiary hearing to develop those habeas claims.

No. 24-10436

As to Prospere, the district court assumed *arguendo* that an actual conflict of interest existed. *Ware v. United States*, No. 3:21-cv-1366, 2024 WL 1942122, at *3 (N.D. Tex. May 2, 2024). But it explained that an ineffective-assistance-of-counsel claim based on a conflict requires Ware to show both "that his counsel labored under 'an actual conflict of interest'" *and* that the conflict "'adversely affected his performance.'" *Id.* (quoting *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019). Setting the first requirement aside, the district court rejected Ware's claim because it found no "adverse effect." *Id.* at *3. As the court noted, an adverse effect requires proof that "some plausible alternative defense strategy or tactic" could have been pursued but was not because the conflict impaired counsel's performance. *See Barbee v. Davis*, 660 F. App'x 293, 313 (5th Cir. 2016) (per curiam) (quoting *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000)).

The district court also rejected Ware's claim that his sentencing lawyers were ineffective. *Ware*, 2024 WL 1942122, at *4. It reasoned that any objection to the introduction of Ware's admissions would have been futile because sentencing judges may consider inadmissible evidence, so long as it is relevant and reliable.[1] The court therefore concluded that sentencing

---

[1] *See Ware v. United States*, No. 3:21-cv-1366, 2024 WL 1942122, at *4 n.3 (first citing *United States v. Youngblood*, 576 F. App'x 403, 409 (5th Cir. 2014) (per curiam); then citing *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1181 (5th Cir. 1993); and then citing *United States v. West*, 58 F.3d 133, 138 (5th Cir. 1998) ("At sentencing, the district court 'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" (citations omitted)).

The Fifth Circuit has, however, pondered a possible exception to this rule when the suppressed evidence was unconstitutionally obtained "for the sole purpose of enhancing [a defendant's] sentence." *See Montoya-Ortiz*, 7 F.3d at 1181 n.10. Here, that exception—which the Fifth Circuit has not formally adopted—does not apply. Ware's proffered admissions to law enforcement were not obtained to enhance his sentence. They

6

No. 24-10436

counsel was not ineffective for failing to object to testimony about those admissions.

Finding no merit in Ware's habeas claims, the district court denied his motions for discovery and an evidentiary hearing. *Ware*, 2024 WL 1942122, at *5–6. In the court's view, those requests amounted to an improper "fishing expedition" to salvage Ware's unsupported allegations. *See Ware*, 2024 WL 1942122, at *6. We later granted a certificate of appealability on Ware's claim to "that his initially retained counsel labored under an actual conflict of interest that adversely affected counsel's representation."[2]

---

were obtained to assess (a) the reliability of statements Van Zandt made, and (b) whether Ware violated his terms of supervised release.

[2] Ware did not require a certificate to appeal the district court's denial of an evidentiary hearing; that issue was sent directly to this merits panel.

No. 24-10436

## II

The Sixth Amendment right to effective assistance of counsel includes the "right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993); U.S. Const. amend. VI. To establish a violation based on multiple representation, a defendant must show both an actual conflict of interest and an adverse effect on counsel's representation. *See United States v. Harrison*, 910 F.3d 824, 827 (5th Cir. 2018) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "Under such circumstances, a defendant need not additionally show prejudice because prejudice is presumed upon a showing of an actual conflict that adversely affected representation." *Id.* (citation modified). Whether a conflict existed and whether it adversely affected counsel's representation are mixed questions of law and fact that we review *de novo*. *United States v. Infante*, 404 F.3d 379, 391 (5th Cir. 2005).

"[W]e review a district court's decision not to grant an evidentiary hearing for abuse of discretion." *Harrison*, 910 F.3d at 826. A district court abuses its discretion "if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014). "A § 2255 motion requires an evidentiary hearing unless (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *Harrison*, 910 F.3d 826–27.

## III

Ware appeals the denial of his § 2255 motion, contending that the district court erred in rejecting his claim that Prospere rendered ineffective assistance. Ware argues that the district court took too narrow a view of what

can qualify as "an adverse effect." He also challenges the denial of an evidentiary hearing. As explained below, we reject both arguments.

A

Ware contends that Prospere "compromised his duty of loyalty" in two ways: (1) by allowing Van Zandt "to provide the government with damaging evidence against [Ware]," and (2) by "representing Van Zandt as he testified against [Ware]." But Ware's claim fails unless he can show not only an "actual conflict of interest," but also that the conflict "adversely affected his representation." *Harrison*, 910 F.3d at 827. The district court assumed without deciding that a conflict existed and rejected the claim for lack of adverse effect. *See Ware*, 2024 WL 1942122, at *3. We do the same.

Ware's IAC claim fails because he does not show that the alleged conflict adversely affected Prospere's representation. *See United States v. Sheperd*, 27 F.4th 1075, 1085 n.24 (5th Cir. 2022) (citing *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). To make that showing, Ware must identify a "plausible alternative defense strategy or tactic" that Prospere could have pursued but did not because of the conflict.[3] *See Barbee*, 660 F. App'x at 313 (quoting *Perillo*, 205 F.3d at 781). He identifies none.

---

[3] On appeal, Ware contends that an "adverse effect" may be demonstrated without identifying a "plausible alternative defense strategy or tactic." In support, he cites several decades-old decisions that no longer reflect our governing formulation of the doctrine. *See Holloway v. Arkansas*, 435 U.S. 475 (1978); *United States v. Hughes*, 817 F.2d 268, 270–71 (5th Cir. 1987); *United States v. Abner*, 825 F.2d 835, 844–45 (5th Cir. 1987); *United States v. Martinez*, 630 F.2d 361, 362–63 (5th Cir. 1980); *Stephens v. United States*, 595 F.2d 1066, 1066–70 (5th Cir. 1979); *United States v. Alvarez*, 580 F.2d 1251, 1257 (5th Cir. 1978); *see also United States v. Williams*, 372 F.3d 96, 106 (2d Cir. 2004). But whatever uncertainty may have existed in those earlier cases, we have since made clear that "to show adverse effect, a petitioner *must* demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest." *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996) (emphasis added) (collecting cases). We apply that

No. 24-10436

The record instead shows that once Prospere learned that the two matters were connected, he withdrew from Ware's case and ceased acting as Ware's advocate in any substantive respect. Prospere's affidavit indicates that he "was unaware of the relationship between Ware and Van Zandt until Mr. Van Zandt was interviewed by federal agents on April 10, 2018." Upon discovering the conflict, Prospere promptly consulted the Government's attorney and filed an unopposed motion to withdraw his representation of Ware. When Ware first appeared for the revocation hearing, Prospere did only what the conflict required: he disclosed the problem and sought a continuance so Ware could obtain new counsel. He did not thereafter make strategic decisions, examine witnesses, or otherwise take substantive action on Ware's behalf. Because Prospere stopped representing Ware at that point, Ware cannot show that any "plausible alternative defense strategy or tactic" was forgone on account of divided loyalties. *See Barbee*, 660 F. App'x at 313 (quoting *Perillo*, 205 F.3d at 781). Indeed, Prospere employed *no* defense strategies for Ware after discovering the conflict.

Relying on *Sheperd*, Ware asks us to remand for additional factfinding and a new trial. And in *Sheperd*, we did exactly that. *See* 27 F.4th at 1084 (remanding for an evidentiary hearing on adverse effect); *see also United States v. Sheperd*, 44 F.4th 305, 306–07 (5th Cir. 2022) (vacating conviction and remanding for a new trial). But *Sheperd* warranted that course because the factual record there was exceptionally sparse. *See* 27 F.4th at 1084 ("[T]he record is too 'sparse' for us to review adverse effect." (citations omitted)). We did not know, for example, "what advice [counsel] gave or did not give Sheperd, and what [counsel] did or did not do on [Sheperd's] behalf." *See id.* Nor did we know why counsel acted as he did. *See id.* Here,

---

requirement today. *See, e.g.*, *McHenry v. Texas*, 826 F. App'x 352, 355 (5th Cir. 2020) (quoting *Perillo*, 79 F.3d at 449).

by contrast, the record shows that Prospere was initially unaware of the conflict, stopped work on Ware's case once the conflict came to light, and denied any ulterior motive for the dual representation.

Prospere's continued representation of Van Zandt, who testified against Ware, also does not support an IAC claim: an attorney cannot provide ineffective assistance to a client after terminating representation of that client. *See Cuyler*, 446 U.S. at 350 ("[U]ntil a defendant shows that his counsel *actively* represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." (emphasis added)). So Prospere's representation of Van Zandt during Ware's sentencing—which occurred after Prospere withdrew from Ware's case—did not reflect ineffective representation of Ware. *Cf. Guidry v. Lumpkin*, 2 F.4th 472, 491 (5th Cir. 2021) (per curiam) (holding that Appellant did not "point to clearly established law that the conflict of interest of counsel who withdraws can form the basis of an ineffectiveness claim that justifies habeas relief").

To be sure, Van Zandt proffered incriminating evidence against Ware while Prospere represented both defendants. That testimony partially contributed to Ware's revocation and three-level reduction for acceptance of responsibility. But, as the district court recognized, Ware did "not sho[w] that these results occurred *because* of [Prospere's] representation of Van Zandt." *Ware*, 2024 WL 1942122, at *3 (emphasis added). By the time of Ware's sentencing, Ware had already replaced Prospere with new counsel. The court, moreover, emphasized that Ware's sentence was based "on the content of the presentence report, the addendum," and SA Hillman's testimony—not Van Zandt's.

B

The district court did not abuse its discretion in denying Ware's motion to vacate without first holding an evidentiary hearing. Because Ware did not supply independent support for his habeas claims, the court rejected his request for an evidentiary hearing as a "fishing expedition" aimed at vindicating his fruitless arguments. *Id.* at *6 (discussing 28 U.S.C. § 2255(b)); *see also United States v. Franks*, 397 F. App'x 95, 101 (5th Cir. 2010) (per curiam) (recognizing that a "§ 2255(b) evidentiary hearing is not a 'fishing expedition'" (quoting *United States v. Edwards*, 442 F.3d 258, 268 n.10 (5th Cir. 2006)). We agree.

Ware argues that an evidentiary hearing would clarify whether Prospere took steps to protect his defense, reveal whether Prospere used confidential information in service of Van Zandt, and expose Prospere's motives in continuing to represent Van Zandt. But Ware "is entitled to an evidentiary hearing on his § 2255 motion only if he presents independent indicia of the likely merit of his allegations," and offers no such indicia here. *See United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation modified). Ware points to no independent, reliable evidence suggesting that Prospere offered ineffective assistance or adversely affected his defense. Prospere negotiated a favorable plea deal for Ware, stopped substantive work on Ware's case upon discovering the conflict, obtained a continuance at Ware's revocation hearing so that Ware could find new counsel, and then promptly withdrew his representation. The district court, moreover, did not rely on Van Zandt's testimony in rescinding Ware's acceptance-of-responsibility guidelines reduction or issuing his sentence.

The record belies each of Ware's reasons for an evidentiary hearing. Because "the motion and the files and records of the case conclusively show that [Ware] is entitled to no relief," the district court correctly denied a

hearing. *See* 28 U.S.C. § 2255(b). The record shows that Prospere respected Ware's legal interests before withdrawing as counsel. Ware's filings—both below and on appeal—fail to show that Prospere's dual representation adversely affected the temporary representation of Ware. And without "independent indicia of the likely merit of [Ware's] allegations," the district court had no reason to order additional factual development at a hearing. *See Reed*, 719 F.3d at 373 (citation omitted). A court abuses its discretion "if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *Urias-Marrufo*, 744 F.3d at 364 (citation omitted). No such error is apparent here: The district court scoured the factual record and denied Ware's IAC claim after applying the relevant standard.

*    *    *

We therefore AFFIRM the district court's denial of Ware's motion to vacate and corresponding request for an evidentiary hearing.