829 F.2d 1121
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey L. POLITANO, Defendant-Appellant.
 No. 86-5686.
 United States Court of Appeals, Fourth Circuit.
 Argued June 4, 1987.
Decided Sept. 16, 1987.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CR 86-64-N)
 Samuel Warrenton Meekins, Jr. (Wolcott, Rivers, Wheary, Nasnight & Kelly, P.C., on brief), for appellant.
 Robert Joseph Seidel, Jr., Assistant United States Attorney (Henry E. Hudson, United States Attorney; Peter C. Condron, Third Year Law Student, on brief), for appellee.
 Before SPROUSE and CHAPMAN, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 In this case, the defendant, Jeffrey L. Politano, the appellant here, stood indicted in the court below on seven counts. The indictment contained three counts of bank fraud, in violation of Title 18, United States Code, Secs. 1344 and 2, two counts of wire fraud, in violation of Title 18, United States Code, Sec. 1343, and two counts of theft of bank funds, in violation of Title 18, United States Code, Secs. 2113(b) and 2. A jury returned verdicts of guilty on all the noted counts. After various post-trial motions, the defendant was sentenced and this appeal followed.
 
 Facts
 
 2
 The fact pattern in this case is a complex one, involving the opening of accounts in out-of-state banks with minimal deposits, and subsequently writing various checks drawn on these out-of-state accounts for deposit in accounts opened in eastern Virginia banks, into which very sizeable sums were deposited by way of these checks. Ultimately, these out-of-state checks were returned for insufficient funds, but, in the meantime, substantial sums had been drawn down from the eastern Virginia bank accounts, and the funds dispersed. The scheme was successful in causing losses to the United Virginia Bank in Norfolk and to the Bank of Virginia located in Norfolk. There was no withdrawal of funds from one of these newly opened local accounts, so that no losses were thus incurred by United Virginia Bank in Richmond; Virginia.
 
 Issues:
 
 3
 In taking up the asserted errors seriatim, it should be noted that all save one turn essentially on disputed factual allegations.
 
 
 4
 I. Was the trial court in error in concluding that unauthorized exhibits were not present in the jury room?
 
 
 5
 After the trial, a question arose as to whether a notebook containing some unadmitted exhibits had been mistakenly given to the jury when it retired to deliberate. The trial judge held a hearing on the matter. Upon weighing the evidence of the FBI agent, the clerk, the courtroom marshal, and the ten jurors present at the hearing, the court concluded that the binder in question had not gone to the jury room. The trial court was faced with the necessity of weighing and evaluating the evidence offered on this point, and it exercised its discretion appropriately in determining what the facts were. It cannot be said that error was committed by the court in this respect.
 
 
 6
 II. Was the action of the trial court in refusing to sever the charges for trial pursuant to Rule 14, Federal Rules of Criminal Procedure, an abuse of the trial court's discretion?
 
 
 7
 Again, in this assignment of error, the court is principally faced with factual disputes. Under the Federal Rules of Criminal Procedure, Rule 8, the government may charge two or more offenses in the same indictment, but such a joinder of offenses requires a showing that either (a) the offenses are of the same or similar character, (b) the offenses are based on the same act or transaction, or (c) the two or more acts or transactions are connected together or constitute parts of a common scheme or plan.
 
 
 8
 Without undertaking to analyze in detail the factual pattern, review of the appendix clearly indicates that the charged offenses certainly were "connected together" or constituted parts of a common scheme or plan and that the offenses were "of the same or similar character." There was close association in time among the offenses charged, there was a consistent pattern demonstrated in the manner in which money was obtained from the local eastern Virginia banks, and the way the out-of-state banks were involved, with one, the Bank of Alaska, being involved in more than one of the transactions. The pattern of opening the accounts in the out-of-state banks, using fictitious names, addressses, etc., the opening of the accounts in the eastern Virginia banks, in each instance with small deposits initially, followed by large deposits by way of checks drawn on the out-of-state banks, and the immediate withdrawal of funds from the eastern Virginia banks all show clearly the common scheme or plan running through the various asserted offenses.
 
 
 9
 It must be concluded, therefore, that there was no abuse of discretion on the part of the trial court in refusing to sever the charges for trial.
 
 
 10
 III. Was reversible error committed below by permitting the government to introduce evidence of other alleged acts of the defendant?
 
 
 11
 In the course of trial, the court permitted, under Federal Rule of Evidence 404(b) evidence of other crimes or acts in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."
 
 
 12
 This evidence consisted of two other schemes in which the appellant had been involved but which were not charged in the indictment. One of these incidents involved the Tri-State Construction Company, Inc. and the other transaction related to events in Eau Claire, Wisconsin. Both incidents occurred after the events charged in the indictment. The pattern in the two challenged events was the same as the pattern in the charged offenses. Absent any question of the lapse of time, evidence as to these two separate incidents certainly would go to show knowledge by the appellant of the manner in which the offenses charged were carried out. Likewise, the similarity of the factual pattern could very well go toward proof of intent on the part of the appellant.
 
 
 13
 The question of the lapse of time between the charged events and the challenged events is disposed of by the holding of this court in United States v. Whaley, 786 F.2d 1229, 1232 (4th Cir. 1986), to the effect that post-indictment acts are not irrelevant under Rule 404. Similarly, United States v. Hadaway, 681 F.2d 214, 217-18 (4th Cir. 1982), held that a lapse of eighteen months was not so great a time span as to render the evidence. irrelevant. In the present case, the similarity of the acts in the proffered evidence to those charged in the indictment was such that the court properly exercised its discretion in permitting the introduction of that evidence, the challenged acts having occurred approximately twelve months after the events charged in the indictment, a permissible interval under Hadaway.
 
 
 14
 IV. Was the admission into evidence of a series of deposit tickets, checks, and money orders reversible error, where the necessary predicate for their admission under Federal Rule of Evidence 803(6) allegedly was not shown?
 
 
 15
 This issue turns on the admission into evidence of certain records relating to some of the transactions through the testimony of Mrs. Vivian White, who testified that she was employed by United Virginia Bank as a researcher, and "would be considered custodian of the records." She was employed in the Norfolk area of United Virginia Bank, and introduced records relating to the branches there but also introduced records relating to a Richmond branch of United Virginia Bank. She indicated that while she did not do the research for the Richmond branch, she would "still be knowledgeable of their records, because United Virginia Bank, they are statewide, and each bank does things the same way."
 
 
 16
 Rule 803(6) of the Federal Rules of Evidence indicates that records of regularly conducted activity may be admitted into evidence by the testimony of the custodian of those records, or other qualified witnesses (emphasis added). A "qualified witness" must be one with knowledge of the declarant's business. Elizarraras v. Bank of El Paso, 631 F.2d 366, 374 n. 24 (5th Cir. 1980). Certainly, Mrs. White's testimony as to her status as a researcher indicated that she was "one with knowledge of the declarant's business." As a bank researcher, she had had occasion to go carefully into the procedures used by United Virginia Bank on a statewide basis. She was therefore qualified to introduce the records in question. Appellant cites Palmer v. Hoffman, 318 U.S. 109 (1943), to support the proposition that these documents were not admissible. In that case, however, it was clear that the documents were prepared in anticipation of litigation and not made "in the regular course of the business". Here, the appellant argues that the "records themselves tend to indicate" their preparation in anticipation of litigation. We disagree. The documents objected to were checks which showed on their face that they had been dishonored, and a picture of the appellant in banks where he was depositing certain checks. These records were made in the regular course of business, and scarcely can be said that they were prepared in anticipation of litigation.
 
 
 17
 Thus, this court concludes that no error was committed by the court below in admitting these business records and doing so on the predicate testimony of Mrs. White.
 
 
 18
 V. When allegedly fraudulent checks are deposited in two branches of a bank, does the appellant's mere presence in those two banks constitute sufficient evidence for a guilty finding on the charge of attempting to perpetrate a fraud on the bank?
 
 
 19
 As stated, this issue might give rise to some problem on the part of this court, until one considers that it is a matter of taking out of the whole case one small part of the evidence. That evidence showed that the appellant was in two branches of a bank on days when worthless checks were deposited to one of the improper accounts. This circumstantial evidence, combined with other evidence in the case, including evidence relating to the opening of this account and photographic identification of Politano as a depositor in other accounts, clearly provided sufficient proof that Politano took substantial steps toward defrauding the bank. Accordingly, it was not error to submit this count to the jury.
 
 
 20
 VI. Was it error to refuse to grant appellant's motion for judgment of acquittal made at the close of the government's case as to the bank robberies charged in the counts of the indictment?
 
 
 21
 VII. Was it error for the trial court to refuse to grant appellant's motion for judgment of acquittal made at the close of all of the evidence as to the noted bank robberies?
 
 
 22
 VIII. Was it error to refuse the appellant's proffered jury instruction in constituting the charge to the jury?
 
 
 23
 Issues VI, VII, and VIII can be treated as a whole. Here, this court comes to a point at which there is not so much a factual controversy as there is a controversy over the law.
 
 
 24
 Appellant was convicted of Counts II and VI of the indictment under 18 U.S.C. Sec. 2113(b), which reads as follows:
 
 
 25
 Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care@ custody, control, management, or possess@on of any bank, credit union, or any savings or loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both;
 
 
 26
 It is undisputed that this section covers common law larceny and larceny by false pretenses. Bell v. United States, 462 U.S. 356 (1983). In the case of larceny by false pretenses, it is required that there be a showing of a false representation of a material fact relied upon by the victim. The appellant cites the case of Williams v. United States, 458 U.S. 279 (1982), to the effect that a check is not a factual assertion. However, the facts in Williams differed markedly from the facts in the present case. In Williams, there was a check-kiting scheme in which Williams was involved, and all the checks were drawn on Williams' own account in his name. In the present case, checks were drawn on accounts which had been opened with false identifications, and in the name of various bogus corporations. Here, in accepting and forwarding for collection the checks in question, the banks relied on the representations as to identifications, the names of corporations, etc., all of which were false. Where the predicate false information appears on the face of the check and the defendant intends that this information be relied upon, Williams does not control. See, U.S. v. Worthington, 41 Crim. L. Rep. (BNA) 2297 (2nd Cir. July 22, 1987). Appellant's remaining argument that he did not "take and carry away" the funds of the bank because he used wire transfers is patently frivolous.
 
 
 27
 For these reasons, the assignments of error in VI and VII are without merit. Assignment VIII relates to the refusal of an instruction based on Williams, and is likewise groundless.
 
 
 28
 IX. Was it an abuse of discretion by the trial court to sentence the appellant to a twelve-year prison term, together with a requirement for restitution in the amount of $124,632.50, when the co-defendant received a sentence of five years with no restitution ordered, in a separate trial conducted in Chicago?
 
 
 29
 In this case, the sentence given to the appellant was clearly well within the limits of the maximum punishment statutorily allowed. As indicated in the appellee's cogent brief, the total criminal liability of the appellant, considering his conviction under the various counts of the indictment, could have totalled forty-five years in prison, and $50,000 in fines. In the absence of the most exceptional circumstances, a sentence that does not exceed statutory limits is within the sound discretion of the trial judge. United States v. Truelove, 482 F.2d 1361 (4th Cir. 1973). We find no such exceptional circumstances in this case.
 
 
 30
 For the various reasons assigned, the judgment of the court below is
 
 
 31
 AFFIRMED.