IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40946
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GURMAIL SINGH and HARJIT DHESI

Defendant-Appellants.
_____

Appeals from the United States District Court
for the Eastern District of Texas
_____

August 10, 2001

Before JOLLY, DeMOSS and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal brings before us the convictions of Gurmail Singh and Harjit Dhesi, who were convicted for harboring aliens for commercial gain, in violation of 8 U.S.C. § 1324. Singh was indicted, but acquitted, of a felon in possession of a gun charge in violation of 18 U.S.C. § 922(g)(1). On appeal, Singh challenges the district court's failure to sever that count in the indictment from this trial. Singh argues that the count was unrelated to the harboring charge, and, because inclusion of the count allowed the government to introduce inflammatory evidence against him,

including a felony conviction and possession of various weapons, he was unfairly and irreparably prejudiced by the district court's abuse of discretion in failing to sever that count from this trial. Both defendants appeal a series of evidentiary rulings, the jury instructions and the failure to compel the production of documents. Because we hold that the only reversible error is the district court's failure to sever the felon in possession charge, we affirm Dhesi's conviction and sentence, but reverse Singh's conviction and sentence and remand for further proceedings.

I

Appellants Singh and Dhesi operated convenience stores in north Texas. In early 1999, they hired three aliens from India to work at their convenience stores. The aliens were all employees or former employees of International Forestry Services, an organization that had arranged for the individuals to come to the United States on work visas.

On August 20, 1999, federal agents executed an INS administrative arrest warrant on Singh at his residence. Singh consented to a search of his bedroom. This search produced a photograph of Singh, a convicted felon, holding an assault style weapon in front of a 1996 calendar.[1] One of the officers recognized the background of the photograph as the back room of one

_____

[1]On February 9, 1996, Singh pled guilty to the federal felony of unlawful possession of food stamps and was sentenced to serve three years' probation. It is unclear exactly when the photograph was taken.

2

of Singh's convenience stores.

Later that afternoon, the officers entered the convenience store and sought consent to search from the clerk in charge. Although they obtained written consent to search, the district court held that this search was illegal because the language barrier prevented the consent from being knowingly and voluntarily given. During the search of the back room, the officers found two individuals who stated that they, as well as the clerk in the front of the store and another individual, were illegal aliens from India who lived in the back room and worked in the defendants' convenience stores. The officers also found a handgun (the subject of Count Four of the indictment) and the passports of three of the four Indian nationals who lived in the back room.

A few days later, the officers returned to the convenience store in an attempt to find the Indian nationals. Although they had disappeared from the area,[2] later, a man who had purchased one of the convenience stores from the defendants cooperated with the officers in an attempt to locate them. Eventually, the aliens agreed to cooperate with the United States in the prosecution of Singh and Dhesi.

On January 12, 2000, a grand jury indictment charged Dhesi and Singh with three counts of harboring illegal aliens for commercial

---

[2]At trial, the aliens testified that Singh and Dhesi kicked them out of the apartment without their belongings and told them to flee the area.

advantage, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324 (a)(1)(A)(v)(II) and 1324 (a)(1)(B)(i). A fourth count charged Singh with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The judge granted a motion to suppress evidence--that is, the passports and the handgun--arising out of the search of the convenience store because the language barriers prevented effective consent. The jury found both defendants guilty on the three counts of harboring illegal aliens. Singh, however, was acquitted on the count of possession of a firearm. Dhesi was sentenced to four months of house arrest and three years' probation and was directed to pay a $9,000 fine. Singh was sentenced to ten months in prison.

II

On appeal, Singh argues that his convictions should be reversed because the district court abused its discretion by failing to sever Count Four--the felon in possession of a firearm charge--because this count was unrelated to the harboring counts and it allowed the government to introduce highly prejudicial evidence that resulted in an unfair trial on the remaining counts. That evidence included Singh's purported earlier involvement in a firearms deal, photographs depicting Singh holding an assault rifle, testimony that Singh perpetually carried a firearm, and evidence that Singh had previously been convicted of a felony-- unlawful possession of food stamps.

We review a district court's denial of a motion for severance

4

for abuse of discretion.  United States v. Bullock, 71 F.3d 171, 174 (5th Cir. 1995).  The district court's decision should not be reversed unless there is "clear, specific and compelling prejudice that resulted in an unfair trial."  Id.

The preliminary inquiry in reviewing the denial of a motion to sever is whether initial joinder was proper under Federal Rule of Criminal Procedure 8(a).  United States v. Holloway, 1 F.3d 307, 310 (5th Cir. 1993).  Under Rule 8(a), offenses may be charged in the same indictment when they "(1) are of the same or similar character, or (2) are based on the same act or transaction, or (3) are connected together or constitute parts of a common scheme or plan."  Id.  Joinder of charges is the rule rather than the exception, and Rule 8 is broadly construed in favor of joinder. Bullock, 71 F.3d at 174.

The government contends that the weapons charge is connected to the harboring charges because Singh threatened the aliens with violence to maintain control over them, and therefore is part of a common scheme or plan.  The alleged link between the weapons charge and the harboring charge, however, is tenuous at best.  There was no significant evidence that Singh used the gun described in the indictment to intimidate the aliens.  In fact, the government produced evidence only that Dhesi, not Singh, had threatened one of the aliens with a weapon.  Although the aliens testified that they were aware that Singh had a handgun under the counter of the store, and in the ceiling of the bathroom of the apartment in the back of

5

the convenience store, there was no evidence that Singh threatened the aliens with the gun or intended to use it against them. Because there was no evidence that Singh's alleged possession of the gun had any connection to his housing and hiring of illegal aliens, the gun count was unrelated to the harboring count. Thus, initial joinder was not appropriate.

Even though the counts were improperly joined, reversal is only appropriate if there is clear evidence of prejudice resulting in an unfair trial. <u>Bullock</u>, 71 F.3d at 174. In <u>United States v. Holloway</u>, 1 F.3d 307, we found reversible error when a robbery charge was not severed from a count charging the defendant with possession of a firearm at the time of his arrest, which occurred two months after the robberies. We recognized that "evidence of a prior conviction has long been the subject of careful scrutiny and use at trial" because of the danger that the jury might convict, not based on the evidence, but because it feels the defendant is a "bad person." <u>Id.</u> at 311. We saw nothing to connect Holloway's possession of the particular weapon to the burglary. Finally, because the jury was informed numerous times that the defendant was a convicted felon, that he was "a bad and dangerous person 'by his very nature,'" we held that the failure to sever prejudiced Holloway and resulted in an unfair trial. <u>Id.</u> at 311-12.

Here, before the trial even began, the jury was told that Singh was a convicted felon when the jury was read the indictment. Although the district court did not allow the government to offer

6

evidence of Singh's prior conviction until the court found that the government had sustained its burden of proof on the other elements of Count Four, the government, in the course of trying to prove the gun count, was permitted to introduce photographs of Singh with assault type weapons and testimony that Singh had been involved in a firearms transaction with other Sikhs. These events had occurred in 1994. Although eleven firearms were confiscated from Singh, they were all found to be legal and eventually returned to Singh. It is true that the district court included a jury instruction that the previous conviction could not be used for any purpose other than deciding the felony element of Count Four.[3] But the element of the harboring offense that was most seriously contested by Singh was his alleged knowledge that the Indians were working illegally, knowledge that he denied. Thus, with Singh's credibility in the balance on a critical element of the offense, evidence that Singh formerly had been convicted of a felony, had engaged in a transaction involving firearms, and perpetually carried a firearm was arguably determinative as to whether the jury would believe him on this crucial issue of fact. Furthermore, the evidence on the gun charge was weak (the weapon listed in the indictment was

---

[3]Although we have noted that possible prejudice resulting from the failure to sever charges may be cured with proper instructions, see Bullock, 71 F.3d at 175, not severing the unrelated charge here allowed the introduction of a variety of highly prejudicial evidence and allowed Singh to be "unjustifiably tried, at least in part, on the basis of who he was and not on the basis of the material evidence related against him." Holloway, 1 F.3d at 312.

7

suppressed because it was found during the search of the convenience store) and the jury ultimately found Singh not guilty on Count Four. We therefore conclude that the inclusion of the weakly supported firearm charge, and the evidence that was admitted based on its relevance to this count, seriously and improperly prejudiced Singh. In short, it resulted in an unfair trial. Thus, because initial joinder was inappropriate and the failure to sever was prejudicial, we hold that the district court's denial of Singh's motion for severance constitutes an abuse of discretion, which, under the circumstances here, requires that we reverse Singh's conviction.

                                III

Although the district court abused its discretion in failing to sever Count Four, the evidence that was introduced as a result of this charge prejudiced only Singh, not Dhesi. We cannot, therefore, reverse Dhesi's conviction on this basis. We will consider, then, the other issues raised on appeal that are said to affect Dhesi's conviction.

Dhesi contends that the district court erred in failing to suppress the testimony of the three illegal aliens. He argues that their identity would not have been discovered but for the illegal search of the convenience store. Although the district court suppressed other evidence from the search, it held that suppression was unnecessary because the witnesses' testimony was too attenuated from the illegal search and because the witnesses inevitably would

8

have been discovered.

As a general matter, the exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the "fruit of the poisonous tree." United States v. Grosenheider, 200 F.3d 321, 327 (5th Cir. 2000). The exclusionary rule is intended to put the police in the same position--not a worse position--than they would have been in if the misconduct had not occurred. Id. Otherwise suppressible testimony or evidence should be admitted if it derives from an independent source, if the link to the illegally secured evidence is attenuated, or if it would inevitably have been discovered without the aid of the illegally obtained evidence. United States v. Miller, 666 F.2d 991, 995 (5th Cir. 1982). To satisfy the inevitable discovery exception to suppression, there must have been a reasonable probability that the evidence would have been discovered from an untainted source. Id. at 996-97. We review the district court's findings of fact supporting the denial of a motion to suppress under a clearly erroneous standard and review the district court's conclusions of law de novo. Grosenheider, 200 F.3d at 326-27.

The Supreme Court has distinguished between inanimate evidence produced by an illegal search and witness testimony whose source is found in the Fourth Amendment transgression. United States v. Ceccolini, 435 U.S. 268, 275-78 (1978). Although both types of evidence can be excluded, exclusion of live witness testimony

9

requires a "closer, more direct link" to the illegal evidence and a consideration of the free will of the witness.  Id.

Here, the government had obtained an arrest warrant for Singh, and the store was under surveillance.  Government agents had noted the other individuals entering the store premises from the rear. One of the illegal aliens was waiting on customers in the front of the store, which was open to the public.  The aliens voluntarily agreed to be interrogated after the illegal search, and the store clerk was a cooperating witness.  These facts add up to a reasonable probability that, during the course of the investigation, the government inevitably would have lawfully discovered that the aliens lived in the convenience store, even if the illegal search had never occurred.  The district court therefore did not err in refusing to suppress the testimonial evidence of the witnesses.

Finally, Dhesi challenges a variety of other trial and discovery determinations by the district court.  We find no merit in any of these contentions.[4]  We therefore affirm Dhesi's

---

[4]Specifically, Dhesi argues that the district court abused its discretion by: (1) excluding testimony relating to the aliens' payment for visas to the United States, (2) excluding expert testimony on whether the defendants would have been aware of the aliens' immigration status if they had complied with federal employment regulations, (3) failing to compel the production of documents, and (4) incorrectly addressing the jury on the required mental state and on federal regulations relating to the hiring of aliens.  Because none of these rulings constituted "clear . . . abuse that resulted in the deprivation of some substantial right of a party," United States v. Okoronkwo, 46 F.3d 426, 435 (5th Cir. 1995), and we are not left with an "ineradicable doubt" as to

conviction and sentence.

                                    IV

    In conclusion, we REVERSE Singh's conviction and sentence on
all counts and REMAND for further proceedings not inconsistent with
this opinion because we hold that the district court abused its
discretion in denying Singh's motion to sever Count Four.  Because
we find no other reversible error, however, Dhesi's conviction and
sentence are AFFIRMED.

                  AFFIRMED in part; REVERSED and REMANDED in part.

---

whether the jury was properly guided, <u>McCoy v. Hernandez</u>, 203 F.3d
371, 375 (5th Cir. 2000), we find no reversible error in Dhesi's
conviction.