REVISED

# United States Court of Appeals
# for the Fifth Circuit

_____

No. 23-40482

_____

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Keith Todd Ashley,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CR-318-1

_____

Before Elrod, *Chief Judge*, and Wiener and Wilson, *Circuit Judges*.
Jennifer Walker Elrod, *Chief Judge*:

IT IS ORDERED that the Appellant's petition for panel rehearing and the Appellee's petition for panel rehearing are both DENIED. However, we withdraw the opinion previously filed in this case on December 12, 2024, and substitute it with the following opinion.

Defendant-Appellant Keith Todd Ashley was charged and convicted on 17 counts of violating federal law, including mail and wire fraud, Hobbs Act robbery, and bank theft for operating a Ponzi scheme and allegedly murdering one of his clients in order to steal funds from the client's bank

No. 23-40482

account and benefit from the client's life insurance proceeds.[1]  The district court sentenced Ashley to 240 months' imprisonment to run consecutively for each of 15 counts of wire and mail fraud and imposed life sentences for his convictions of Hobbs Act robbery and bank theft.  On appeal, Ashley challenges the sufficiency of the evidence for most of his convictions, claims that his sentence is unreasonable, asks for a new trial based on the district court's denial of his motions for continuance and severance, and claims that the cumulative error doctrine applies.

After obtaining convictions on all counts, the government now concedes on appeal that there was insufficient evidence to convict Ashley of five counts and that the life-sentence enhancement for his conviction of bank theft did not apply.  Because we agree that several convictions were not supported by sufficient evidence and that the life-sentence enhancement does not apply, we AFFIRM in part, VACATE in part, and REMAND for resentencing and any other proceedings.

I

Ashley was a licensed financial advisor for the investment firm Parkland Securities.[2]  Among other products, Parkland offers unit investment trusts (UITs), which are trusts that hold securities but do not have a guaranteed rate of return.  Ashley convinced James Seegan, Robert Greening, and two other clients to invest in UITs offered by Parkland.  The clients wrote checks or made wire transfers to Ashley's bank account with Branch Banking & Trust.  However, Ashley used those funds to cover

---

[1] Ashley was also indicted in Dallas County for capital murder of his client.  *See Texas v. Ashley*, No. F2100109 (195th Dist. Ct., Dallas Cnty., Tex. Apr. 21, 2021).

[2] Ashley worked in a variety of fields, often simultaneously.  As relevant to this case, Ashley also worked as an investment advisor, insurance broker, nurse, paramedic, and owned a brewery business.

personal expenses and other non-investment related expenses, such as expenses at casinos, Ashley's brewery business, legal fees, mortgage expenses, and other personal retail, restaurant, and entertainment bills. Ashley only occasionally made some payments back to his investors. However, rather than reflecting investment returns, these payments were often merely transfers of funds from one client to another, a characteristic trait of a Ponzi scheme.

Ashley was also an insurance agent for Midland National Life Insurance Company. In 2016, he sold Seegan a $2 million life insurance policy, which identified Seegan's wife as the beneficiary. In 2019, Seegan executed a will and named Ashley the executor and trustee of any trust created by the will. Seegan also created a trust and designated Ashley his successor trustee. With Ashley's assistance, Seegan then changed the beneficiary of his life insurance policy from his wife to the trust, and Ashley executed the change with Midland National.

Shortly after executing this beneficiary designation for Seegan's life insurance policy, Ashley allegedly met Seegan at Seegan's home, purportedly to draw blood for medical testing in relation to the policy, but instead sedated Seegan with a drug, shot and killed him, and staged the scene as a suicide. Ashley subsequently called Midland National to inform the company of Seegan's death and ask about the necessary paperwork for a life insurance claim. Ashley also requested that one of his employees retrieve a copy of Seegan's autopsy. Two days after the alleged murder, Ashley visited Seegan's home again, purportedly to assist Seegan's widow in managing his estate, obtained access to Seegan's phone from his widow and son, and used an app on the phone to transfer $20,000 from Seegan's bank account to himself.

No. 23-40482

A federal grand jury indicted Ashley on six counts of wire fraud (Counts 1 through 6). The First Superseding Indictment added 11 additional counts: eight counts of wire fraud (Counts 7 through 14), two counts of mail fraud (Counts 15 and 16), and one count of firearm possession in furtherance of Hobbs Act robbery (Count 17).

A grand jury returned a Second Superseding Indictment with the same charges but amended facts. Ashley filed a motion to dismiss Count 17 for improper venue. The district court denied the motion.

A grand jury then returned a Third Superseding Indictment, which removed two of the wire fraud counts (Counts 7 and 8) and added three counts: carrying or discharging a firearm during a Hobbs Act robbery causing death or murder (Count 18), bank theft (Count 19), and attempted wire fraud (Count 20). Ashley moved to continue trial and all trial-related deadlines. The district court denied the motion.

A grand jury later returned a Fourth Superseding Indictment, which amended Counts 19 and 20.[3] Ashley filed a motion to dismiss Counts 18 and 19, making the same venue argument that he made with respect to Count 17. Ashley also filed a motion to sever Counts 1 through 6 from Counts 9 through 20. The district court denied both motions.

Trial began the following week, and the jury found Ashley guilty on all counts presented.[4] Following trial, the district court denied Ashley's motion for acquittal and sentenced Ashley to 240 months' imprisonment for each of

---

[3] Count 20 was amended to add a completed wire fraud violation.

[4] Count 17 was dismissed by the government at trial because it was a lesser included offense of Count 18.

No. 23-40482

Counts 1 through 6, Counts 9 through 16, and Count 20. The district court imposed life sentences for each of Counts 18 and 19.

Ashley now appeals, seeking reversal of the judgment or a remand for a new trial.[5] On appeal, the government concedes that Counts 2, 4, 5, 6, and 18 were not supported by sufficient evidence. The government also concedes that the life-sentence enhancement did not apply to Count 19.

## II

We review preserved challenges to the sufficiency of the evidence *de novo*, viewing the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *United States v. Njoku*, 737 F.3d 55, 62 (5th Cir. 2013) (citation omitted). "This standard is 'highly deferential to the verdict.'" *United States v. Harris*, 821 F.3d 589, 598 (5th Cir. 2016) (quoting *United States v. Roetcisoender*, 792 F.3d 547, 550 (5th Cir. 2015)). "In doing so, we ask whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Njoku*, 737 F.3d at 62 (internal quotation marks omitted).

## III

Ashley challenges the sufficiency of the evidence for his convictions of Counts 1 through 16, which include wire fraud charges under 18 U.S.C. §§ 1343 and 1347 and mail fraud charges under §§ 1341 and 1349. To sustain a conviction for wire fraud, the government must prove that: "(1) a scheme to defraud exists, (2) the defendant used wire communications in interstate or foreign commerce to further that scheme, and (3) the defendant had

---

[5] Ashley does not challenge Count 20, his conviction of completed and attempted wire fraud based on fraudulently designating himself the beneficiary on another life insurance policy.

specific intent to defraud." *United States v. Davis*, 53 F.4th 833, 842 (5th Cir. 2016) (citation omitted). "A defendant 'acts with the intent to defraud when he acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself.'" *United States v. Swenson*, 25 F.4th 309, 318–19 (5th Cir. 2022) (quoting *United States v. Evans*, 892 F.3d 692, 712 (5th Cir. 2018)).[6] We address the counts in groups based on the relevant underlying conduct.

## A

Counts 1 and 3 charge Ashley with wire fraud for soliciting money from his clients—purportedly to manage it on their behalf—but diverting it to cover his personal expenses instead. Specifically, these counts concern Ashley's fraudulent transfer of clients' funds from their accounts to his business account. Count 1 is based on Ashley's transfer of $150,000 from Seegan's account, and Count 3 is based on Ashley's transfer of $75,000 from Greening's account.[7]

Ashley contends that the evidence was insufficient to prove his intent to defraud on Count 1 because the "investment" he received from Seegan was a promissory note that included an amortization schedule upon which he "intended" that Seegan would be repaid. However, the evidence at trial showed that, rather than investing Seegan's assets in securities as promised, Ashley diverted the funds to other uses: paying other "investors," expenses at casinos, expenses at Ashley's brewery business, legal fees, mortgage

---

[6] The elements for mail fraud are the same as those for wire fraud, except that the means by which the fraud is conducted is by mail instead of by wire. *United States v. McMillan*, 600 F.3d 434, 447 n.24 (5th Cir. 2010).

[7] Ashley does not argue that there was insufficient evidence for his intent on Count 3 and so forfeits that issue. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021); *United States v. Shah*, 95 F.4th 328, 363 (5th Cir. 2024).

expenses, and other personal retail, restaurant, and entertainment bills. The jury rationally concluded that Ashley's evidently false promise of investing client funds proved his intent to defraud beyond a reasonable doubt. That Ashley received Seegan's "investment" through a promissory note that allegedly would "eventually return[]" his funds "is of no moment" because "[t]o satisfy the intent requirement, the defendant need only have *intended* that [his] scheme . . . lead [him] to gain something of value." *Swenson*, 25 F.4th at 319. Accordingly, there was sufficient evidence to support the jury's determination that Ashley intended to defraud his clients.[8]

B

Counts 2, 4, 5, and 6 charge Ashley with wire fraud based on Ashley's transferring client funds from his business account to his personal account. Ashley contends that the government failed to establish that these transfers furthered a scheme to defraud, which is the second element of wire fraud. *See Davis*, 53 F.4th at 842. Specifically, Ashley asserts that these transfers, on their own, were immaterial and did not further a scheme to defraud because they were made between accounts that were exclusively within his control. On appeal, the government agrees with Ashley and concedes that these convictions should be vacated.

We agree with the parties. A fraudulent scheme has "reached fruition" when "[t]he person[] intended to receive the money ha[s] received it irrevocably." *Kann v. United States*, 323 U.S. 88, 94 (1944); *see also United States v. Strong*, 371 F.3d 225, 228 (5th Cir. 2004) ("[T]he fraud was complete when the defendants obtained the cash from the . . . bank." (citing *Kann*, 323 U.S. at 94–95)). Ashley "irrevocably" obtained his clients' money

---

[8] We do not consider Ashley's arguments against the sentencing enhancements for Counts 1 and 3 because the district court did not apply those sentencing enhancements.

for the purposes of the fraud when the funds were wired to a business account that, because it was in his exclusive control, he then used for personal and other expenses.

In its denial of Ashley's motion for acquittal, the district court held otherwise, concluding that the clients' money "only became Ashley's personal funds for his use after it was transferred out of the [business] account." However, the record shows that, once the clients' funds were deposited in Ashley's business account, Ashley withdrew funds from that account as cash and paid credit card debts, gambling debts, legal fees, and expenses at casinos, among other bills. Because Ashley paid for personal and other expenses relevant to the fraud directly from his business account, the money was already available "for his use" before he transferred the money to his personal account.[9]    Accordingly, we agree with the parties and conclude that there was insufficient evidence to support Ashley's conviction on these counts.

## C

Counts 9, 10, 11, 12, 13, 15, and 16 charge Ashley with defrauding and attempting to defraud Midland National, the company that issued Seegan's life insurance policy. Counts 9 through 13 are wire fraud charges based on Ashley directing Midland National to change the beneficiary of Seegan's life insurance policy to a trust that was under Ashley's control. Counts 15 and 16 are mail fraud charges based on Ashley obtaining Midland National's

---

[9] As an alternative basis for affirming Ashley's conviction, the district court held that his transfer of client funds to his personal account advanced the scheme because it "made the transactions less suspect" to have the clients wire money to his business account. Yet that too is undercut by the fact that Ashley used the business account for personal and other expenses.

confirmation of this change in beneficiary designation by mail and Ashley's later efforts to obtain a copy of Seegan's autopsy report, respectively.

Ashley urges that these convictions were not supported by sufficient evidence because Ashley did not make false representations to Midland National or benefit from the insurance proceeds, and that mailing Midland National was immaterial to the scheme. However, we need not reach these arguments because the government did not sufficiently prove that Ashley was engaged in a scheme to defraud Midland National, as the first element of the crime requires. *See Davis*, 53 F.4th at 842.

A scheme to defraud of the sort charged against Ashley, "if successful, must wrong the victim's property rights in some way." *United States v. Ratcliff*, 488 F.3d 639, 648 (5th Cir. 2007). That is not the case here. Under Seegan's life insurance policy, Midland National was contractually obligated to pay out Seegan's life insurance benefits upon Seegan's death regardless of who the beneficiary was. That Seegan changed the beneficiary of the policy to his trust (the named beneficiaries of which, in turn, were Seegan's wife and son), rather than his wife personally, did not change Midland National's obligation. *See id.* at 645–46 (holding that there was no scheme to defraud where the payment would have been made "regardless" of the defendant's actions). Ashley's communications with Midland National to implement this change were thus not a predicate for wire or mail fraud.

Relying on Fourth Circuit precedent, the government asserts that a person defrauds an insurer when he "create[s] the circumstances giving rise to a claim and then ma[kes] a claim for benefits under the policy." *United States v. Gray*, 405 F.3d 227, 235 n.2 (4th Cir. 2005). However, because Ashley was neither a beneficiary of Seegan's life insurance policy nor a beneficiary of the trust, he could not make a claim for benefits under the policy. The government acknowledges this fact but presses that Ashley still

"stood to gain" from the payout of life insurance proceeds to the trust because, as trustee, Ashley had "broad authority" over the trust. Yet that does not make Midland National the victim, as the government contends. At most, the evidence proffered at trial supported that Ashley intended to defraud Seegan's widow and son, the trust's beneficiaries, from the life insurance benefits paid to the trust. However, the government's theory for these counts was that Midland National was defrauded. Because the change in the beneficiaries of Seegan's trust did not defraud Midland National, the jury lacked sufficient evidence to convict Ashley of Counts 9, 10, 11, 12, 13, 15, and 16.

D

Count 14 is an additional wire fraud conviction based on Ashley's use of Seegan's cell phone—two days after Seegan was allegedly murdered—to transfer $20,000 from Seegan's bank account to his own. Grouping his arguments against Count 14 with his arguments against the Midland National wire fraud counts, Ashley contends that he did not make any false or fraudulent misrepresentation to Midland National. However, Count 14 is predicated on Ashley's deception of Seegan's widow and son, not Midland National. Thus, Ashley's challenge to Count 14 fails.

In wire fraud cases, "[w]e have described a scheme to defraud[] as including 'any false or fraudulent pretenses or representations intended to deceive others in order to obtain something of value, such as money, from the [entity] to be deceived.'" *United States v. Greenlaw*, 84 F.4th 325, 339 (5th Cir. 2023) (third alteration in original) (quoting *United States v. Evans*, 892 F.3d 692, 711–12 (5th Cir. 2018)). "[S]howing a scheme to defraud requires proof that [Ashley] made some kind of a false or fraudulent material misrepresentation." *United States v. Spalding*, 894 F.3d 173, 181 (5th Cir. 2018) (internal quotation marks omitted). In particular, the

misrepresentation must have "a natural tendency to influence, or be capable of influencing, the decision of the [person] to which it was addressed." *Evans*, 892 F.3d at 712 (alteration adopted) (citation omitted).

The record provides more than sufficient support for the jury's conclusion that Ashley falsely represented himself to Seegan's widow and son in order to gain access to Seegan's cell phone and use it to wire funds from Seegan's bank account to his own. The jury heard from Seegan's widow that: the day after Seegan was allegedly murdered, Ashley came to Seegan's house to "help with cleaning" the house and "look[ing] through all the paperwork"; Ashley came back the following day and told her that he needed to "go through" Seegan's cell phone; to access the phone, Ashley had Seegan's son unlock it because Seegan's son's fingerprint was programmed into the device in case of emergencies; Ashley asked if Seegan's widow had seen text messages between him and Seegan, and when she confirmed that she had, Ashley "accidentally" deleted all the text messages between the two; and Seegan's widow did not give permission to Ashley to transfer $20,000 from Seegan's bank account to his own or know that this was why Ashley sought access to the phone.

The jury also heard testimony from Arthur Hilson, a technology engineering manager at Texas Capital Bank, the bank that maintained Seegan's account. Hilson testified that on the day Ashley accessed Seegan's cell phone, Seegan's account was accessed through the bank's online banking platform after multiple attempts from an outside IP address, and about eight minutes after Seegan's bank account was accessed, a wire for $20,000 was transmitted from Seegan's bank account to Ashley's business account.

The jury rationally found that, to procure something of value—in this case, $20,000 from Seegan's bank account—Ashley engaged in a scheme to defraud beyond a reasonable doubt. Ashley misled the Seegans by giving

them the false impression that he was lending a helping hand. That false pretense influenced Seegan's widow and son to allow Ashley to access Seegan's cell phone and bank account. Once he had access, Ashley then took Seegan's money without his widow's knowledge or permission. A rational jury could have found that, instead of helping a widow and her son as he had represented, Ashley deceived the vulnerable for his financial gain. That was sufficient evidence to convict Ashley of Count 14.

IV

Ashley next challenges the sufficiency of the evidence for his conviction of Count 18, using or carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1), (j). The predicate crime of violence was Hobbs Act robbery, 18 U.S.C. § 1951(a). Count 18 was based on Ashley's use of a firearm when he allegedly killed Seegan and (two days later) used Seegan's phone to transfer $20,000 from Seegan's bank account to his own. Ashley claims that the government failed to prove the predicate crime (Hobbs Act robbery) and that venue was improper in the Eastern District of Texas.

To sustain a conviction for Hobbs Act robbery, the government must prove: (1) the unlawful taking or obtaining of personal property from a person or in the presence of another person, against his will; (2) by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, to property in his custody or possession, or anyone in his company at the time of the taking or obtaining, and (3) the offense in any way or degree obstructed, delayed or affected commerce or the movement of any article or commodity in commerce. *See* 18 U.S.C. § 1951(a); Fifth Cir. Pattern Jury Instruction No. 2.73B (Criminal 2019).

Ashley contends that there was no completed robbery because Ashley's taking of Seegan's money occurred two days after the alleged

murder.  On appeal, the government concedes that there was insufficient evidence, however on the different basis that Ashley's taking of Seegan's money did not occur "in the presence" of Seegan.  The government explains that because Ashley accessed Seegan's phone and transferred $20,000 to himself two days after Seegan's murder, Ashley was not in Seegan's "presence" when he stole the money, as the first element requires.  The government avers that the Hobbs Act's requirement that the property must be taken "from the person or in the presence of another" refers to a person's physical presence, not legal personhood or estate.

We agree with the government that, for these reasons, Ashley's subsequent taking of Seegan's funds did not occur in his physical presence and thus was not Hobbs Act robbery.  Ashley's argument that venue was improper for Count 18 is, therefore, moot.

## V

Ashley challenges the sufficiency of the evidence for Count 19, his conviction of bank theft under 18 U.S.C. § 2113(b) based on his transferring $20,000 of Seegan's funds to his business account—the same conduct that formed the basis for Count 14.  Ashley also challenges the district court's application of the life-sentence enhancement under § 2113(e) and venue in the Eastern District of Texas as to this count.  We review each argument in turn.

## A

To sustain a conviction for bank theft, the government must prove that the defendant took and carried away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of the bank.  18 U.S.C. § 2113(b); *see also Carter v. United States*, 530 U.S. 255, 262 (2000).

Ashley contends that there was insufficient evidence to sustain his conviction because he did not physically enter Texas Capital Bank or take money from it. The government responds that § 2113(b) does not require the physical carrying away of money from a bank. We agree with the government.

We have previously said that the "taking and carrying" element of bank theft can be "accomplished simply by 'withdrawing funds from a bank pursuant to a scheme to defraud.'" *United States v. Godfrey*, No. 94-20424, 1995 WL 581915, at *3 (5th Cir. 1995) (unpublished) (quoting *United States v. Goldblatt*, 813 F.2d 619, 625 (3d Cir. 1987)); *see also United States v. Johnson*, 706 F.2d 143, 144–145 (5th Cir. 1983) (sustaining a bank theft conviction where the defendant instructed a bank teller over the phone to wire transfer funds from the account of the person he was impersonating). Several of our sister circuits have also concluded that § 2113(b) does not require the physical taking away of money. *See United States v. Sayan*, 968 F.2d 55, 62 (D.C. Cir. 1992); *United States v. Kucik*, 844 F.2d 493, 499–500 (7th Cir. 1988); *United States v. Bradley*, 812 F.2d 774, 779 n.3 (2d Cir. 1987); *United States v. Politano*, No. 86-5686, 1987 WL 38624, at *4 (4th Cir. 1987) (unpublished) (declaring that the defendant's "argument that he did not 'take and carry away' the funds of the bank because he used wire transfers is patently frivolous"); *United States v. Morgan*, 805 F.2d 1372, 1377 (9th Cir. 1986).

Moreover, as the government contends, Ashley's implied "physical" taking construction of § 2113(b) makes little sense in the statute's context. The preceding subsection, § 2113(a), which also punishes bank theft, expressly requires physical entry or attempted entry into a bank. *Id.* § 2113(a) (punishing "[w]hoever enters or attempts to enter any bank . . . or any building used in whole or in part as a bank . . . with intent to commit . . . larceny"). By contrast, § 2113(b) lacks any such requirement.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, . . . Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Brown v. Gardner*, 513 U.S. 115, 120 (1994) (citation omitted); *see also Rodriguez-Avalos v. Holder*, 788 F.3d 444, 451 (5th Cir. 2015) (quoting *Brown*, 513 U.S. at 120); *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011) (quoting *City of Chicago v. Env't Def. Fund*, 511 U.S. 328, 338 (1994)). Accordingly, neither physical entry into a bank nor the physical taking of money from a bank is a requirement for bank theft under § 2113(b).

Ashley next urges us to read into § 2113(b) a requirement that, when the government alleges theft by false pretenses, the defendant must have made a misrepresentation directed at the bank. *See United States v. Howerter*, 248 F.3d 198, 204–05 (3d Cir. 2001) (concluding that "because there was no falsity or false pretenses directed at the bank . . . , [the defendant's] conduct was not fraudulent vis-a-vis the bank"). On this account, Ashley then could not be convicted because, while he deceived Seegan's widow and son in accessing Seegan's phone to withdraw funds, he did not mislead the bank by the mere act of electronically withdrawing funds from Seegan's account. *Cf. United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991) ("The mere act of ordering or causing to be ordered a wire transfer does not of itself necessarily constitute a misrepresentation in all circumstances.").

However, Ashley's argument falters out of the gate because, while § 2113(b) covers theft committed by false pretenses, it is not confined to the common-law elements of theft by false pretenses. *See Carter*, 530 U.S. at 264–67 (rejecting importing the "common-law meaning" of the terms "robbery" and "larceny" into § 2113(b) because "neither term appears in the text"). By contrast, in *Briggs*, an affirmative representation was required because the relevant bank theft statute there, 18 U.S.C. § 1344, requires "false or fraudulent pretenses, representations, or promises." *Briggs*, 939

F.2d at 226–27. Section 2113(b) lacks such an express requirement. Instead, we have said that § 2113(b) "embraces all felonious takings with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *United States v. Bell*, 678 F.2d 547, 548 (5th Cir. Unit B 1982) (en banc) (alterations adopted and internal quotations omitted), *aff'd*, 462 U.S. 356 (1983); *see also Godfrey*, 1995 WL 581915, at *3. Ashley does not contest that he intended to steal Seegan's funds held at Texas Capital Bank by causing them to be wired to his account. Ashley's withdrawal of Seegan's funds after deceiving Seegan's widow and son was a fraudulent taking and thus sufficient to support Ashley's conviction of bank theft under § 2113(b).

B

Ashley challenges the district court's application of the sentencing enhancement for Count 19 established by 18 U.S.C. § 2113(e), which provides for a life-sentence maximum when the offense involves the killing of another person. On appeal, the government concedes that the enhancement should not have been applied because the evidence was insufficient to support that Ashley killed Seegan "in committing" the bank theft. We agree with the government for the same reason that we agree with the government's concession of insufficient evidence for Hobbs Act robbery in Count 18. Section 2113, in language identical to the Hobbs Act, covers robbery "from the person or presence of another." *Compare* 18 U.S.C. § 2113(a), *with id.* § 1951(b)(1). Ashley's alleged murder of Seegan, though a prerequisite to his committing bank theft, did not occur directly "in committing" the theft. We therefore vacate the life-sentencing enhancement on Ashley's conviction of Count 19.

C

Finally, Ashley challenges the jury's determination that venue was proper in the Eastern District of Texas. Seegan's house, where Ashley both allegedly committed the murder and used Seegan's phone to wire funds, is located outside the district. Ashley contends that venue was improper because the bank from which Ashley wired Seegan's funds, Texas Capital Bank, does not have any branch locations in the district and any preparatory steps that Ashley took within the district are not alone sufficient to establish venue. In its denial of Ashley's motion for acquittal, the district court held that Ashley's murder of Seegan was a prerequisite to the theft, and that Ashley's preparatory steps in the district toward the murder—leaving his home, which was located in the district, with a firearm and driving to Seegan's home—were sufficient to establish venue.

Because Ashley's venue challenge is "properly preserved by a motion for judgment of acquittal, we review the district court's ruling de novo." *United States v. Romans*, 823 F.3d 299, 309 (5th Cir. 2016). We will affirm if "a rational jury could conclude that the government established venue by a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

We affirm the jury's conclusion of proper venue. Venue is appropriate in a district in which the offense was committed. Fed. R. Crim. P. 18. We need not reach the question of whether Ashley's preparatory steps are alone sufficient because an essential part of the theft—the wire transfer of funds to Ashley's bank account—occurred in the district. As the government identifies, the account to which Ashley wired the funds was established and maintained in the district and was associated with Ashley's business entity located in the district. Thus, the wire transfer was completed in the district. Ashley contends that holding a "destination" bank account

sufficient to establish venue would improperly equate bank theft with wire fraud, but that is merely a function of the fact that, here, Ashley's act of "tak[ing] and carr[ying] away" funds under the bank theft statute was accomplished by a wire transfer. 18 U.S.C. § 2113(b).

Moreover, venue was appropriate for the independent reason that Ashley first undertook to commit the theft within the district. The jury was presented with evidence showing that, after Seegan's murder, Ashley first attempted to access Seegan's bank account to commit the theft remotely from Ashley's residence within the district, only traveling to Seegan's house after he could not log in to Seegan's account because he did not have the required temporary access code. Thus, the jury properly determined that venue lies in the Eastern District of Texas.

## VI

Ashley next contends that the district court erred by denying his motions for continuance and severance. We review for abuse of discretion. *See United States v. Sheperd*, 27 F.4th 1075, 1085 (5th Cir. 2022) (continuance); *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 475 (5th Cir. 2022); *United States v. Singh*, 261 F.3d 530, 533 (5th Cir. 2001) (severance). To reverse, we must determine that the denial of the relevant motion resulted in "specific and compelling" or "serious" prejudice. *Sheperd*, 27 F.4th at 1085; *Singh*, 261 F.3d at 533. We address each motion in turn.

## A

Ashley challenges the district court's denial of his motion to continue the trial in order for him to prepare his defense to the Third Superseding Indictment, which added Counts 18, 19, and 20 to the case less than three weeks before trial.

A district court may grant a continuance to advance the "ends of justice" when the government brings a superseding indictment that operates to prejudice the defendant. 18 U.S.C. § 3161(h)(7)(A), (B)(iv); *United States v. Jackson*, 50 F.3d 1335, 1339 (5th Cir. 1995). We have identified several factors to weigh:

> (1) the amount of time available to prepare for trial; (2) the defendant's role in shortening the time available; (3) the likelihood of prejudice from denial; (4) the availability of discovery from the prosecution; (5) the complexity of the case; (6) the adequacy of the defense actually provided at trial; (7) the experience of the attorney with the accused; and (8) timeliness of the motion.

*United States v. Boukamp*, 105 F.4th 717, 746 (5th Cir. 2024) (quoting *Sheperd*, 27 F.4th at 1085) (alterations adopted).

Ashley insists that the court's denial of his continuance motion prejudiced him because he was required to prepare a defense for two counts carrying life sentences on short notice, and because the factual bases for the added counts were unclear. However, the relevant charges added by the Third Superseding Indictment—Count 18 (possession of a firearm in furtherance of a crime of violence causing death/murder by robbery) and Count 19 (bank theft)—were based on the same operative facts as Count 17 (possession of a firearm in furtherance of a crime of violence), which was included in the Second Superseding Indictment filed well over a year earlier.

Ashley contends that these added counts "shifted the focus of the entire case" to the alleged murder, but the government had already alleged facts concerning the murder in connection with the Second Superseding Indictment. While the addition of Counts 18 and 19 did represent the first time that the government sought a life sentence in this case, Ashley does not

articulate how the additional counts prejudiced his defense, such as, for example, by explaining what evidence he would have tried to obtain with more time. In any event, because the government has conceded the insufficiency of the evidence for Count 18 and the life-sentence enhancement for Count 19, and we agree, any prejudice Ashley suffered as a result from the denial of his continuance motion is now moot. Accordingly, the district court did not reversibly err in denying Ashley's continuance motion.

B

Ashley next challenges the district court's denial of his motion to sever Counts 9 through 20, each of which involved evidence concerning Seegan's alleged murder, from Counts 1 through 6, his wire fraud charges for operating a Ponzi scheme.

A district court has the discretion to join multiple charges in the same trial where the offenses "are connected with or constitute parts of a common scheme of plan." Fed. R. Crim. P. 8(a). If a district court joins charges under Rule 8(a), severance is proper only where "there is clear, specific and compelling prejudice" to the defendant. *United States v. Huntsberry*, 956 F.3d 270, 287 (5th Cir. 2020) (quoting *Singh*, 261 F.3d at 533). Such prejudice can occur, for example, when "the government added [some] counts solely to buttress its case on the other counts" in an "attempt[] to shore [up] its thin evidence" on those counts. *United States v. McCarter*, 316 F.3d 536, 540 (5th Cir. 2002) (alteration adopted and citation omitted). Finally, the district court must "balance" any "possible prejudice to the defendant" with the "economy of judicial administration." *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985).

Ashley contends that he was prejudiced because his wire fraud charges based on his diverting client funds to personal and other expenses (Counts 1 through 6) were joined with charges based on his alleged murder of Seegan.

The government's concession on appeal that the jury lacked sufficient evidence to convict Ashley of four of those wire fraud counts adds additional force to Ashley's argument. However, because we vacate Ashley's convictions of those charges that the government conceded, the effect of any such prejudice is limited. *See United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012) ("[W]e may affirm if we find that misjoinder occurred but that the error was harmless."). In any event, Ashley fails to articulate the "specific" prejudice he faced that is necessary to overcome the "usual presumption in favor of joinder." *Huntsberry*, 956 F.3d at 287 (citation omitted). The government's evidence for convicting Ashley of the remaining charges, Counts 1 and 3, was "not thin." *Id.* at 289. As explained above, the jury was presented with voluminous evidence documenting Ashley's use of client funds for personal and other expenses. Ashley does not explain how the allegations concerning Seegan's murder, though dramatic, were necessary for the government to "shore" up the evidence for his wire fraud charges. *McCarter*, 316 F.3d at 540. Accordingly, the district court did not reversibly err in denying Ashley's severance motion.

## VII

Ashley next challenges the procedural and substantive reasonableness of his sentence. Ashley contends that his sentence was procedurally unreasonable because the district court calculated the amount of loss he was responsible for based on intended loss rather than actual loss and did not account for funds that Ashley returned to his victims. Ashley contends that his sentence was substantively unreasonable because the district court was biased against him and imposed a sentence that was greater than necessary.

In light of the government's stark reversal in its position on appeal and our decision to vacate several of Ashley's convictions, we remand for resentencing on all remaining counts. We leave any issues regarding the

recalculation of loss, the effect of any returned funds, and the procedural and substantive reasonableness of the new sentence for the district court to consider on remand.

## VIII

Last, Ashley asserts that the cumulative error doctrine warrants reversal. "[T]he cumulative error doctrine . . . provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc) (citation omitted). However, cumulative error "justifies reversal only when errors 'so fatally infect the trial that they violated the trial's fundamental fairness.'" *Id.* at 344 (quoting *United States v. Fields*, 483 F.3d 313, 362 (5th Cir. 2022)). "[T]he possibility of cumulative error is often acknowledged but practically never found persuasive." *Id.* (citation omitted).

Though the government's conduct in this case was unusual, we ultimately decline to apply the cumulative error doctrine here. The government's concession of numerous convictions on appeal certainly raises the prospect that serious error existed in the trial. The government obtained convictions from the jury on all counts, but on appeal conceded that the jury lacked sufficient evidence to convict Ashley of two charges resulting in life sentences and several wire fraud charges. Moreover, the government offers only threadbare explanations of its change in positions. However, Ashley does not articulate how these errors resulted in a fundamentally unfair trial, instead arguing that they evidenced government "overreach." While the government may have overreached, that alone is insufficient to conclude that such errors were "fatal[]" to the whole trial's fairness. *Id.* (citation omitted). The government presented "substantial evidence of guilt" for the remaining

counts. *Id.* Accordingly, we decline to apply the cumulative error doctrine here.

*     *     *

For the reasons stated above, we AFFIRM Ashley's convictions of Counts 1, 3, 14, and 19, VACATE his convictions of Counts 2, 4, 5, 6, 9, 10, 11, 12, 13, 15, 16, and 18, and REMAND to the district court for resentencing and any other proceedings consistent with this opinion.